[Civ. No. 28008. Fourth Dist., Div. One. Dec. 23, 1983.]

THE PEOPLE ex rel. GEORGE DEUKMEJIAN, as Attorney General, etc., et al., Plaintiffs and Appellants, v. CHE, INC., et al., Defendants and Respondents.

COUNSEL

John K. Van de Kamp, Attorney General, Thomas E. Warriner, Assistant Attorney General, Anne S. Pressman, Barbara M. Motz and Gordon R. Overton, Deputy Attorneys General, for Plaintiffs and Appellants.

Hahn & Cazier, Julian A. Pollok, Charles R. Revlett, City Attorney, and Warren B. Diven, Assistant City Attorney, for Defendants and Respondents.

OPINION

WORK, J.—The People and the Director of the State Department of Rehabilitation (plaintiffs) appeal a summary judgment for CHE, Inc., doing business as the Chart House Restaurant, City of Oceanside and its Director of Building and Housing, Fritz Stagliano, on their complaint seeking to compel CHE to provide a legally sufficient access for the physically handicapped and to mandate the city and Stagliano to enforce compliance with legal requirements. Applicable statutory and regulatory schemes and the circumstances of this case show there are several remaining triable issues of fact. We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

In August 1976, CHE leased a parcel of unimproved waterfront property from the Oceanside Smallcraft Harbor District (District) upon which to

build its "Chart House Restaurant." Configuration of the parcel and the District's retention of an easement for pedestrian access along the waterfront, required constructing a multistory building, with the upper portion housing the dining and bar areas and cantilevered over the easement. The smaller first floor was used by restaurant personnel as a service area. Access to the dining and bar areas for able-bodied patrons is provided through a westfacing, glass and wood door, into an attractive foyer decorated with plants and skylights, up a wood-paneled staircase at the top of which stands the maitre d'. When the restaurant first opened, the physically handicapped were restricted to entering through a north door entrance, neither designated nor decorated for patron access, which remained locked during business hours.

Shortly after the restaurant opened for business a handicapped person complained. On January 12, 1978, Stagliano received a letter from the Department of Rehabilitation (Department), stating the locked employee entrance was neither equivalent facilitation nor a primary entrance because it should remain unlocked during business hours, be appropriately designated to depict access, and the interior hallway should be decorated so as to be attractive and appealing to all patrons. By letter dated six days later, Department advised Stagliano: "Access via the *locked* employee entrance is not equivalent facilitation and is through a secondary entrance. Access shall be provided to the restaurant through the *existing primary* entrance (ASA 5.2.1) or *through another primary entrance* [italics added] that meets the requirements and specifications of the current California Access Laws and Standards."

Originally, when the restaurant obtained its temporary building permit, the building inspector directed it to request in writing approval for using the north door as the handicapped entrance. Its request was denied by Stagliano, who later ordered the restaurant to make modifications regarding signs, doors, and decoration to comply with state laws concerning access for the handicapped. Although CHE made modifications costing approximately $15,000, Stagliano refused to issue a permanent occupancy permit because CHE had not yet complied fully with the modifications it agreed to make to comply with handicap requirements outlined by the Attorney General's Office. The changes were not made. Stagliano issued the permanent occupancy permit because the Oceanside City Attorney determined CHE had complied with the purpose and intent of the laws requiring access for the handicapped to the Chart House Restaurant. CHE promptly reneged on its agreement with the Attorney General, stating it would not install a new elevator at the restaurant to provide a primary entrance for the handicapped. CHE has ignored the state's demand for compliance with applicable law and its agreement and now operates a restaurant the handicapped may not enter

through the primary customer entrance. Instead they must enter through the north entrance, now decorated to some degree, requiring them, upon reaching the second story in the elevator, to tour the kitchen and scullery areas before reaching the diningroom and maitre d' station.

Defendants moved for summary judgment, arguing alternatively the statutory and regulatory law were satisfied because cumulatively they only require public accommodations to provide *some* means of access to the facilities; the restaurant was exempt from the cited legal requirements pursuant to Health and Safety Code section 19956[1] because it was above the ground floor; or the restaurant was exempt under section 19957.[2] The order granting summary judgment gives no clue whether the trial court accepted one or all of the three "alternate" grounds, and no statement of reasons was requested or supplied. Thus, we are compelled to analyze the total record to determine if any of the grounds support the summary judgment.

### DEFINING THE PARTIES' RESPECTIVE CONTENTIONS

Preliminarily, we note the law governing summary judgment procedure pursuant to Code of Civil Procedure section 437c is firmly established. " ' ■ The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. ■ Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor [fn. omitted] and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. ■ The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. ■ In examining the sufficiency of the affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. ■ Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts.' " (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953], quoting *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62

---

[1]All statutory references are to the Health and Safety Code unless otherwise specified.

[2]Section 19957 provides: "In cases of practical difficulty, unnecessary hardship, or extreme differences, a building department responsible for enforcement of this part may grant exceptions from the literal requirements of the standards and specifications required by this part or permit the use of other methods or materials, but only when it is clearly evident that equivalent facilitation and protection are thereby secured."

Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Elam v. College Park Hospital* (1982) 132 Cal.App.3d 332, 347 [183 Cal.Rptr. 156].)

The primary issue is whether the trial court properly applied applicable statutory and regulatory law governing access for the physically handicapped to the relatively undisputed facts before it. Regarding quality of access, CHE asserts plaintiffs presented no admissible evidence raising a triable issue of fact. Alternatively, CHE argues quality of access is not an issue because Civil Code section 54.1 does not apply because it is a general statute governed by the specific provisions of section 19955 et seq. dealing precisely with the issue of access and, in any event, it requires simply access to all persons, handicapped or not, and not identical access.

Plaintiffs grant section 19956 sets the legal standard for handicapped access. They claim this statute incorporates Government Code section 4450 et seq. Section 4450 states its purpose generally as to assure buildings are accessible to and useable by the physically handicapped.[3] Government Code section 4451 sets the specific standard of compliance with the ASA specifications until regulations are developed.[4] ASA specifications require at least one *primary entrance* be accessible to and useable by the physically handicapped.

CHE contends the legal standard requires only reasonable, not necessarily equal, access. On the other hand, plaintiffs urge useable access requires

---

[3]Government Code section 4450 currently provides: "It is the purpose of this chapter to insure that all buildings, structures, sidewalks, curbs, and related facilities, constructed in this state by the use of state, county, or municipal funds, or the funds of any political subdivision of the state shall be accessible to and useable by the physically handicapped. The State Architect shall adopt and submit proposed building standards for approval pursuant to Chapter 4 (commencing with Section 18935 of Part 2.5 of Division 13 of the Health and Safety Code and shall adopt other regulations for making buildings, structures, sidewalks, curbs, and related facilities accessible to and useable by the physically handicapped. The regulations and building standards relating to access for the physically handicapped shall be consistent with the standards for buildings and structures which are contained in pertinent provisions of the latest edition of the Uniform Building Code, as adopted by the International Conference of Building Officials, and such regulations and building standards shall contain such additional requirements relating to buildings, structures, sidewalks, curbs, and other related facilities as the State Architect determines are necessary to assure access and useability for the physically handicapped. In developing and revising such additional requirements, the State Architect shall consult with the State Department of Rehabilitation, the League of California Cities, the County Supervisors Association of California, and at least one private organization representing and comprised of physically handicapped persons."

[4]Subdivision (d) of Government Code section 4451 currently provides: "Until building standards are published in the State Building Standards Code and other regulations are adopted by the State Architect pursuant to Section 4450, buildings, structures, sidewalks, curbs, and related facilities subject to the provisions of this chapter or Part 5.5 (commencing with Section 19955) of Division 13 of the Health and Safety Code shall conform to the American Standards Association Specifications A117.1/1961."

ingress and egress through a *primary entrance,* not merely through a "reasonable" access.

CHE also contends it is exempt under section 19956 because a reasonable portion of all facilities and accommodations normally sought and used by the public in its restaurant are accessible to and useable by the physically handicapped.

Alternatively, CHE claims it was properly granted an exception from the literal statutory requirements due to hardship pursuant to section 19957. Plaintiffs argue the former is inapplicable to the present circumstances and, not only does CHE not qualify for a statutory exemption, there is a triable issue of fact regarding whether such an exemption was ever granted.

### STATUTORY SCHEME AND APPLICABLE RULES OF STATUTORY CONSTRUCTION

In 1968, the Legislature enacted two statutory schemes to avoid discriminating against the physically disabled. Government Code section 4450 et seq. is designed to guarantee access and use of all public buildings. Section 4450 directed the State Architect to adopt and submit proposed building standards for approval. During the interim, Government Code section 4451 required builders adhere to the American Standards Association specifications A117.1/1961. The Legislature created these temporary standards as *"minimum requirements* to insure that buildings, structures and related facilities covered by this chapter are accessible to, and functionable for, the physically handicapped to, through, and within their doors, without loss of function, space, or facility where the general public is concerned." (Gov. Code, § 4452, italics added.) ASA specification 5.2.1 provides: *"At least one primary entrance . . . shall be useable by individuals in wheelchairs.*

"Note: Because entrances also serve as exits, some being particularly important in case of an emergency, and because the proximity of such exits to all parts of buildings and facilities, in accordance with their design and function, is essential [citation] it is preferable that all or most entrances (exits) shall be accessible to, and useable by, individuals in wheelchairs and individuals with other forms of physical disability herein applicable." (Italics added.)

The second statutory scheme enacted by the Legislature during the same year was Civil Code section 54 et seq., declaring the physically disabled are entitled to the same right as the able-bodied to full and free use of streets, highways, sidewalks, walkways, public buildings, public facilities, and other public places (Civ. Code, § 54), and declaring they were "entitled

to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of . . . hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited . . . ." (Civ. Code, § 54.1, subd. (a).)

To insure public accommodations or facilities constructed with private funds would be governed by Government Code section 4450 et seq., the Legislature in 1969 enacted section 19955 et seq.[5] Section 19956 currently provides: "All public accommodations constructed in this state shall conform to the provisions of Chapter 7 (commencing with Section 4450) of Division 5 of Title 1 of the Government Code; and except that in multistoried buildings, stories or mezzanines above the first story are exempt from the requirements of this chapter if a reasonable portion of all facilities and accommodations normally sought and used by the public in such a building are accessible to, and useable by, the physically handicapped." The Legislature also enacted a hardship exception within section 19957, providing: "In cases of practical difficulty, unnecessary hardship, or extreme differences, a building department responsible for the enforcement of this part may grant exceptions from the literal requirements of the standards and specifications required by this part or permit the use of other methods or materials, but only when it is clearly evident that facilitation and protection are thereby secured." Finally, section 19958 provided for local enforcement of the provisions.

■ Our interpretation of the statutory scheme is governed by the following fundamental rules of statutory construction: Of primary importance, "the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) ■ The questioned provision must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which, upon application, results in wise policy rather than mischief or absurdity. (*United Business Com.* v. *City of*

---

[5]Section 19955 currently provides in pertinent part: "The purpose of this part is to insure that public accommodations or facilities constructed.in this state with private funds adhere to the provisions of Chapter 7 (commencing with Section 4450) of Division 5 of Title 1 of the Government Code. For the purposes of this part 'public accommodation or facilities' means a building, structure, facility, complex, or improved area which is used by the general public and shall.include auditoriums, hospitals, theaters, restaurants, hotels, motels, stadiums, and convention centers."

*San Diego* (1979) 91 Cal.App.3d 156, 170 [154 Cal.Rptr. 263]; *City of Costa Mesa* v. *McKenzie* (1973) 30 Cal.App.3d 763, 770 [106 Cal.Rptr. 569].) ■ If possible, significance should be attributed to every word, phrase, sentence and part of an act in pursuance of the legislative purpose, as "the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*Moyer* v. *Workmen's Comp. Appeals Bd., supra,* at p. 230.)

## The Legal Standard for Accessibility for the Handicapped

■ Our construction of the legislative schemes commences with Civil Code section 54 et seq. which declares, in part, that all physically handicapped are entitled to the same right as the able-bodied to full and free use of public facilities and places (§ 54), requiring operators of such facilities to "open its doors on an equal basis to all that can avail themselves of the facilities without violation of other valid laws and regulations." (*Marsh* v. *Edwards Theatres Circuit, Inc.* (1976) 64 Cal.App.3d 881, 892 [134 Cal.Rptr. 844]; Civ. Code, § 54.1, subd. (a).) To give meaning to the public accommodation law prohibiting discrimination against the handicapped, the Legislature enacted Government Code section 4450 et seq. providing for the establishment of standards for buildings constructed with public funds designed to insure accessibility by the handicapped. A year later, the Legislature expanded these requirements to facilities constructed with private funds (§ 19955 et seq.) and, with certain limited exceptions, required conformance with the same standards set forth within Government Code section 4450 et seq. The underlying legislative intent of these statutory schemes is to require affirmative conduct so as to guarantee access to the physically handicapped upon construction of new facilities or with the repair and alteration of existing facilities. (*Marsh* v. *Edwards Theatres Circuit, Inc., supra,* at p. 888.) The Supreme Court explained in *In re Marriage of Carney* (1979) 24 Cal.3d 725, 738 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028], these statutory schemes were part of "a growing body of legislation intended to reduce or eliminate the physical impediments" to "their participation in community life."

The parties do not dispute section 19956 expressly incorporates the legal standard for access for handicapped persons set forth within Government Code section 4450 et seq.; which in turn describes its purpose as assuring the construction of public facilities which are accessible to and useable by the physically handicapped, and establishes the specific standard of compliance as that set forth within the American Standards Associations Specifications A117.1/1961. These latter specifications, like the express purpose

of Government Code section 4450 and the language within the exemption in section 19956, were expressly intended to make all buildings and facilities used by the public accessible to and functionable for the physically handicapped. Similar to section 19957, the specifications provide: "[i]n case of the practical difficulty, unnecessary hardship, or extreme differences, administrative authorities may grant exceptions from the literal requirements of this standard or permit the use of other methods or materials, *but only when it is clearly evident that equivalent facilitation and protection are thereby secured.*" (ASA, spec. I.2, italics added.)

 Reading these provisions in harmony, we conclude the latter two statutory schemes regarding access to public buildings and facilities were enacted to provide substance to the full and equal access right of the handicapped, setting forth the legal standard requiring at least one *primary entrance* be accessible to and useable by the physically handicapped. Where a second primary entrance is necessary in order to satisfy this requirement, it need not be identical in character; however, it must satisfy our construction of the phrase "primary entrance" (*infra*), because the statutory and regulatory law, read as a whole, is designed to guarantee safe access for the physically disabled while permitting them to function as equals to the maximum extent feasible within every aspect of society. Consequently, exception to the literal statutory and regulatory requirements is warranted only when equivalent facilitation and protection are not denied. (ASA, spec. I.2; § 19957.) Thus, equality, at minimum, requires access free from difficulties or obstacles (see American Heritage Dict. (New College ed. 1976) p. 469, col. 2) and potential hazards which would endanger even the most cautious physically handicapped.

In construing the phrase "primary entrance," we accord the word "primary" its usual, ordinary, and common sense meaning. (*In re Rojas* (1979) 23 Cal.3d 152, 155 [151 Cal.Rptr. 649, 588 P.2d 789].) Black's Law Dictionary (5th ed. 1979) at page 1071, column 2, defines primary as: "[f]irst; principal, chief; leading. First in order of time, or development, or in intention . . . ." This definition only leads us to a determination a primary entrance constitutes a principal entrance, one first in importance. However, there is further guidance in the regulations on handicapped access promulgated by the State Architect in 1981 (eff. 12-31-81) within the State Building Code, California Administrative Code, title 24, section 2-101 et seq. There, a primary entrance is defined as "any entrance to a facility which has a substantial flow of pedestrian traffic to any specific major function of the facility." (Cal. Admin. Code, tit. 24, § 2-417(k).) We are entitled to rely on this definition, because it constitutes a clarifying regulatory amendment to the statutory schemes in controversy which from their enactment incorporated by reference the phrase "primary entrance."

For, "[w]hile it is true that as a general rule statutes are not to be given retroactive effect unless the intent of the Legislature cannot be otherwise satisfied (*Di Genova* v. *State Board of Education* (1962) 57 Cal.2d 167, 176 [18 Cal.Rptr. 369, 367 P.2d 865]), an exception to the general rule is recognized in a case where the legislative amendment merely clarifies the existing law. (*Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 828, fn. 8 [114 Cal.Rptr. 589, 523 P.2d 629]; *Martin* v. *California Mut. B. & L. Assn.* (1941) 18 Cal.2d 478, 484 [116 P.2d 71]; *State Bd. of Equalization* v. *Board of Supervisors* (1980) 105 Cal.App.3d 813, 824 [164 Cal.Rptr. 739].) The rationale of this exception is that in such an instance, in essence, no retroactive effect is given to the statute because the true meaning of the statute has been always the same. (*Stockton Sav. & Loan Bank* v. *Massanet* (1941) 18 Cal.2d 200, 202 [114 P.2d 592].)" (*Tyler* v. *State of California* (1982) 134 Cal.App.3d 973, 976-977 [185 Cal.Rptr. 49]; see also *State Bd. of Equalization* v. *Board of Supervisors* (1980) 105 Cal.App.3d 813, 824 [164 Cal.Rptr. 739].) ██ This statutory rule of construction applies equally to administrative regulations. (*Marina Village* v. *California Coastal Zone Conservation Com.* (1976) 61 Cal.App.3d 388, 394 [132 Cal.Rptr. 120]; see *Smith* v. *Regents of University of California* (1976) 58 Cal.App.3d 397, 403 [130 Cal.Rptr. 118].)

██ We reject CHE's apparent argument the statutory and regulatory scheme always authorizes separate primary entrances for handicapped and nonhandicapped patrons. Because we find the required primary entrance must necessarily be burdened by a substantial flow of pedestrian traffic, a public restaurant entrance used by no patrons other than the physically handicapped cannot realistically be a "primary entrance."

The prohibition against discrimination of the handicapped within Civil Code section 54 et seq., the enactment of Government Code section 4450 et seq. and section 19955 et seq., and the incorporation by reference of the phrase "primary entrance" within applicable specifications, reflect a legislative sensitivity to the hardships suffered by those afflicted with a wide range of physical disabilities. They are part of an expanding legislative effort to attain "the commendable goal of total integration of handicapped persons into the mainstream of society . . . ." (*In re Marriage of Carney, supra,* 24 Cal.3d 725, 740.) The Legislature has declared "[i]t is the policy of this state to encourage and enable disabled persons to participate fully in the social and economic life of the state . . . ." (Gov. Code, § 19230, subd. (a).) These legislative responses are designed to lessen their entire burden, by guaranteeing equal and full access to public buildings, facilities, and accommodations, without jeopardizing their safety. We believe the law is intended to promote accommodation of the physically handicapped by insuring them access to public restaurants without facing the unnecessary,

adverse psychological impact of being separated from regular customer traffic and shunted through secondary entrances.

### Section 19956 Does Not Provide an Exemption for the Restaurant

 Defendants unpersuasively contend CHE is exempt from conforming with Government Code section 4450 et seq. under section 19956 because all public accommodations in "multistoried buildings, stories or mezzanines above the first story are exempt from the requirements of this chapter *if a reasonable portion of all facilities and accommodations normally sought and used by the public* in such a building are accessible to, and useable by, the physically handicapped." (§ 19956; italics added.) This statute would exempt a restaurant with accessible, equivalent dining areas on both the first and second floors from having to provide access to tables on the second floor. It does not exempt a restaurant having *all its public accommodations above the ground floor* from providing an upper floor primary entrance equivalent to the handicapped. The Legislature obviously intended that, when ground floor public accommodations satisfy the required standards, access to the same facilities on upper floors need not be readily accessible to the physically handicapped. This construction comports with the more specific provisions of section 19955.5 exempting all stories or mezzanines above and below the first story of passenger vehicle service stations, shopping centers, offices of physicians and surgeons and office buildings constructed in multistory buildings from the requirements of this section if a ramp or elevator is not available to provide public access to such stories or mezzanines. For, "first story" is defined in section 19955.3, subdivision (b) as "the lowest story in a building which qualifies as a story and *which provides the basic services or functions for which the building is used. . . ."* (Italics added.)

### The Trial Court Erred in Granting the Summary Judgment

 Thus, there are several triable issues of fact. First, whether the north door is a primary entrance. Probative of this matter are the subconsiderations of whether the north entry accommodates a substantial portion of the general public patrons and whether the less attractive north entrance routing through the kitchen and scullery areas, potentially subjects both employees and guests to safety hazards.[6]

---

[6]Plaintiffs filed the amended declaration of Chuck Fleming, chief of the mobility barriers section of the State Department of Rehabilitation. In that capacity, he was responsible for educating and working with the public to insure compliance with Government Code section 4450 et seq. After inspecting the Chart House, he concluded a physically handicapped person could encounter difficulty in maneuvering his/her way through the maze of bustling employees within the kitchen and scullery area as well as would be subjected to the unpleasant

Defendants' contention Stagliano granted CHE, and in fact CHE qualified for, an exemption under section 19957 is also replete with triable issues of fact. Preliminarily, pursuant to section 19958, the building department must enforce section 19955 et seq. but is authorized (§ 19957) to grant exceptions from the literal requirements of the standards and specifications within the statutory scheme to avoid practical difficulty, unnecessary hardship, extreme differences, so long as equivalent facilitation and protection are secured. However, a triable issue of fact exists regarding whether Stagliano in fact *granted* an exemption. His declaration reflects he issued the permanent certificate of occupancy after determining the restaurant had complied with all applicable statutes and standards, and even if it had not it was entitled to the grant of an exception under section 19957. However, his letter to the Chart House accompanying the permanent certificate of occupancy states he relied on a written opinion of the city attorney that the restaurant met the purpose and intent of the law as requiring access for the handicapped and thus stated the restaurant had met all building code requirements before its operation. Since the opinion of the city attorney is not included in this record, defendants have failed to factually show the basis upon which the permanent certificate of occupancy issued. In any event, had the city attorney and Stagliano granted an exemption, there exists the triable issue of fact regarding whether at law his articulated reason, "the configuration of the site for the restaurant, including consideration of the easements encumbering the site, would create practical difficulty and unnecessary hardship were different access for the handicapped than what is now provided required," warranted the granting of the exemption. Moreover, it may be an abuse of discretion to grant such an exemption, where the facts show the parties had constructive notice of statutory access requirements (the restaurant was built post-1976), another elevator could be installed as a primary entrance, and the lack of facts to support the claim an alternative elevator would cost in excess of $40,000 and destroy the "architectural integrity" of the building. Defendants have failed to establish there is no triable issue of fact regarding CHE's entitlement to exemption, not only regarding a showing of practical difficulty, unnecessary hardship or extreme differences, but also by showing the present alternative method of entry through the north entrance secures "equivalent facilitation and protection."[7]

---

atmosphere of dirty dishes and garbage, raucous language, among other things. He also noted the route is not as well decorated nor as aesthetically pleasing as the primary entrance for the able-bodied, or the rest of the building. It was his personal opinion the Chart House does not provide an equivalent facilitation as required by section 19957 and does not meet ASA specification 5.2.1.

[7] Further, we note the declarations of Stagliano and Fleming are in conflict regarding whether the restaurant was entitled to exemption under section 19957.

 Defendants wrongly claim the Evidence Code section 664 presumption, that an official duty has been regularly performed, entitles them to summary judgment. Specifically, they allege plaintiffs have failed to present any evidence challenging Stagliano's grant of an exemption or his finding of "practical difficulty, unnecessary hardship, or extreme difficulties." Further, they rely on the presumption to conclude the north door was a primary entrance and Stagliano purportedly found it to be such.

In *Security Pac. Nat. Bank* v. *Associated Motor Sales* (1980) 106 Cal.App.3d 171, 179 [165 Cal.Rptr. 38], the court summarized the law in point: "*People* v. *Rath Packing Co.* (1974) 44 Cal.App.3d 56, 65 [118 Cal.Rptr. 438], discussed the effect of the presumption that 'official duty has been regularly performed' (Evid. Code, § 664), which is a presumption 'affecting the burden of proof' (Evid. Code, § 660), and concluded that it did not relieve the moving party . . . of the necessity to 'demonstrate that there is no possible way in which [the opposing party] can claim error in the weighing procedures used . . . .' (*People* v. *Rath Packing Company, supra,* 44 Cal.App.3d at p. 65.) Consequently, the court concluded that in the face of such a presumption, 'the resisting party need only demonstrate a "possibility" of being able to rebut the presumed . . .' fact. (*Ibid.*)

"The ruling in *Rath* is consistent with the holding of *Barnes* v. *Bluehaven Pools* (1969) 1 Cal.App.3d 123, 127 [81 Cal.Rptr. 444], which states: 'There is nothing in the statute which lessens the burden of the moving party simply because at the trial the resisting party would have the burden of proof on the issue on which the summary judgment is sought to be predicated. In such a case, on the motion for summary judgment, the moving party must generally negative the matters which the resisting party would have to prove at the trial. [Citations.]' Since the placement of the burden of proof does not affect the showing required for summary judgment, it is obvious that a presumption affecting the burden of proof is likewise irrelevant in that respect."

Here, as illustrated above, plaintiffs have sufficiently demonstrated the possibility of being able to rebut the presumed fact and defendants have failed to negate all matters which plaintiffs would have to prove at trial. As to the exemption, there are no facts showing Stagliano ever granted one. Moreover, to warrant an exemption, equivalent facilitation and protection must be provided. Plaintiffs submitted the declaration of the chief of the mobility barrier section of the Department of Rehabilitation who, upon personal investigation, concluded the north door did not satisfy this requirement. Consequently, a triable issue of fact remains regarding whether the north entrance constitutes equivalent facilitation. Further, there is a triable issue of fact regarding whether the facts establish practical difficulty, un-

necessary hardship, or extreme differences, in light of the countervailing economic factors to the feasibility of installing another elevator as a primary entrance and its impact on the building's architectural integrity.

■ As to whether the north entrance constitutes a primary one, defendants' reliance on the issuance of the permanent certificate of occupancy is misplaced, because the presumed fact is rebutted by the declaration of Charles Fleming.

DISPOSITION:

Judgment reversed.

Cologne, Acting P. J., and McConnell, J.,* concurred.

A petition for a rehearing was denied January 12, 1984, and the petition of respondent CHE, Inc., for a hearing by the Supreme Court was denied February 29, 1984.

---

*Assigned by the Chairperson of the Judicial Council.