TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 95-502 |
| of | : | |
| | : | November 29, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE JAMES L. McBRIDE, COUNTY COUNSEL, VENTURA COUNTY, has requested an opinion on the following question:

Is the removal of soil, rocks, and debris from flood control channels and debris basins by a flood control district in order to maintain original construction contours a "surface mining operation" requiring a permit and the preparation of a reclamation plan?

CONCLUSION

The removal of soil, rocks, and debris from flood control channels and debris basins by a flood control district in order to maintain original construction contours is not a "surface mining operation" requiring a permit and the preparation of a reclamation plan.

ANALYSIS

The Legislature has enacted a comprehensive statutory scheme, the Surface Mining and Reclamation Act of 1975 (Pub. Resources Code, §§ 2710-2796; "SMRA"),[1] under the administration of the State Mining and Geology Board ("Board"), to protect lands subject to mining operations. Section 2711 states:

_____

[1]All references hereafter to the Public Resources Code are by section number only.

"(a) The Legislature hereby finds and declares that the extraction of minerals is essential to the continued economic well-being of the state and to the needs of the society, and that the reclamation of mined lands is necessary to prevent or minimize adverse effects on the environment and to protect the public health and safety.

"(b) The Legislature further finds that the reclamation of mined lands as provided in this chapter will permit the continued mining of minerals and will provide for the protection and subsequent beneficial use of the mined and reclaimed land.

"(c) The Legislature finds that surface mining takes place in diverse areas where the geologic, topographic, climatic, biological and social conditions are significantly different and that reclamation operations and the specifications therefor may vary accordingly."

Section 2712 provides:

"It is the intent of the Legislature to create and maintain an effective and comprehensive surface mining and reclamation policy with regulation of surface mining operations so as to assure that:

"(a) Adverse environmental effects are prevented or minimized and that mined lands are reclaimed to a usable condition which is readily adaptable for alternative land uses.

"(b) The production and conservation of minerals are encouraged, while giving consideration to values relating to recreation, watershed, wildlife, range and forage, and aesthetic enjoyment.

"(c) Residual hazards to the public health and safety are eliminated."

The question presented for resolution concerns whether the removal of soil, rock, and debris from flood control channels and debris basins by a flood control district in order to maintain original construction contours is a "surface mining operation" requiring a permit and reclamation plan under SMRA. We conclude that it is not.

In construing the language and requirements of SMRA, we follow well established rules of statutory interpretation. We are to "`ascertain the intent of the Legislature so as to effectuate the purpose of the law.'" (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698.) Statutes "must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which, upon application, results in wise policy rather than mischief or absurdity." (*People Ex rel. Deukmejian* v. *Che, Inc.* (1983) 150 Cal.App.3d 123, 132.) "[T]he various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*Moyer* v. *Workmens' Comp. Appeals Bd.* (1973) 10 Cal.3d 222,

230.)  Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844.)

Subdivision (a) of section 2770 provides:

"Except as provided in this section, no person shall conduct surface mining operations unless a permit is obtained from, a reclamation plan has been submitted to and approved by, and financial assurances have been approved by, the lead agency . . . ."

The "lead agency" is defined in section 2728 as follows:

"`Lead agency' means the city, county, San Francisco Bay Conservation and Development Commission, or the board which has the principal responsibility for approving a surface mining operation or reclamation plan pursuant to this chapter."

Accordingly, under the terms of section 2770, a permit to conduct surface mining operations must be obtained which has as its predicate the filing of a reclamation plan for the mined lands and approval of that plan.  (See *Oro Fino Gold Mining Corp.* v. *County of El Dorado* (1990) 225 Cal.App.3d 872, 883; 59 Ops.Cal.Atty.Gen. 641, 648, 653 (1976); see also *City of Ukiah* v. *County of Mendocino* (1987) 196 Cal.App.3d 47, 57-58; 66 Ops.Cal.Atty.Gen. 79, 83-85 (1983); 60 Ops.Cal.Atty.Gen. 162, 164-165 (1977).)

Section 2772 sets forth the form and content of the required reclamation plan for the area where surface mining operations are to occur.  Subdivision (c) of section 2772 states:

"The reclamation plan shall include all of the following information and documents:

"(1) The name and address of the surface mining operator and the names and addresses of any persons designated by the operator as an agent for the service of process.

"(2) The anticipated quantity and type of minerals for which the surface mining operation is to be conducted.

"(3) The proposed dates for the initiation and termination of [the] surface mining operation.

"(4) The maximum anticipated depth of the surface mining operation.

"(5) The size and legal description of the lands that will be affected by the surface mining operation, a map that includes the boundaries and topographic details of the lands, a description of the general geology of the area, a detailed description of the geology of the area in which surface mining is to be conducted, the location of all

streams, roads, railroads, and utility facilities within, or adjacent to, the lands, the location of all proposed access roads to be constructed in conducting the surface mining operation, and the names and addresses of the owners of all surface interests and mineral interests in the lands.

"(6) A description of, and a plan for, the type of surface mining to be employed, and a time schedule that will provide for the completion of surfaced mining on each segment of the mined lands so that reclamation can be initiated at the earliest possible time on those portions of the mined lands that will not be subject to further disturbance by the surface mining operation.

"(7) A description of the proposed use or potential uses of the mined lands after reclamation and evidence that all owners of a possessory interest in the land have been notified of the proposed use or potential uses.

"(8) A description of the manner in which reclamation, adequate for the proposed use or potential uses will be accomplished, including both of the following:

"(A) A description of the manner in which contaminants will be controlled, and mining waste will be disposed.

"(B) A description of the manner in which affected streambed channels and streambanks will be rehabilitated to a condition minimizing erosion and sedimentation will occur.

"(9) An assessment of the effect of implementation of the reclamation plan on future mining in the area.

"(10) A statement that the person submitting the reclamation plan accepts responsibility for reclaiming the mined lands in accordance with the reclamation plan.

"(11) Any other information which the lead agency may require by ordinance."

The key statute requiring our analysis is section 2735. It defines "surface mining operations" for which a permit and plan are required under SMRA.   Section 2735 states:

"`Surface mining operations' means all, or any part of, the process involved in the mining of minerals on mined lands by removing overburden and mining directly from the mineral deposits, open-pit mining of minerals naturally exposed, mining by the auger method, dredging and quarrying, or surface work incident to an underground mine.   Surface mining operations shall include, but are not limited to:

"(a) In place distillation or retorting or leaching.

"(b) The production and disposal of mining waste.

"(c) Prospecting and exploratory activities."

The Board has implemented section 2735 by adopting the following regulation:

"In addition to the provisions of Sections 2735 of the Act, borrow pitting, streambed skimming, segregation and stockpiling of mined materials (and recovery of same) are deemed to be surface mining operations unless specifically excluded under Section 2714 of the Act or Section 3505 of these regulations." (Cal. Code Regs., tit. 14, § 3501.)[2]

Although the terms "mining," "minerals," and "mined lands" are not defined in SMRA, definitions thereof predating SMRA are found in the general provisions of the Public Resources Code. Section 2005 defines "minerals" as follows:

"`Minerals' means any naturally occurring chemical element or compound, or groups of elements and compounds, formed from inorganic processes and organic substances, including, but not limited to, coal, peat, and bituminous rock, but excluding geothermal resources, natural gas, and petroleum."[3]

Section 2200 defines "mine" in the following terms:

"For the purposes of this chapter, `mine' includes all mineral bearing properties of whatever kind or character, whether underground, or in a quarry or pit, or any other sources from which any mineral substance is or may be obtained."

With these statutory provisions in mind, we turn to the legislative history of SMRA's enactment. (Stats. 1975, ch. 1131.) It discloses the Legislature's intent to encourage and regulate surface mining operations and to require the restoration and conservation of mined lands for future beneficial uses. We have found no indication that SMRA was intended to apply to the performance of required maintenance of flood control channels by government agencies. For example, the report of the Senate Committee On Natural Resources and Wildlife dated May 9, 1975, states with respect to the proposed legislation:

"Since 1967, more than 30 states have enacted or strengthened state laws requiring the rehabilitation of mined lands and there has been increased discussion of federal legislation mandating a state program. Yet, despite the magnitude of mining activity, California has no regulation at the state level. Surface mining in California is,

_____

[2]All references hereafter to title 14 of the California Code of Regulations are by regulation number only. Regulation 3501 defines "streambed skimming" as: "Excavation of sand and gravel from stream bed deposits above the mean summer water level or stream bottom, whichever is higher."

[3]This definition has been adopted by the Board for purposes of SMRA. (Reg. 3501.)

however, subject to numerous controls, including state air- and water-pollution regulations and city and county ordinances governing noise, vibration, dust, slopes, fencing, and reclamation. However, existing controls do not (1) adequately assure that reclamation will in fact occur, (2) provide a mechanism to resolve jurisdictional problems that can result when a mineral deposit crosses city and county boundaries, and (3) recognize the need to protect mineral resource deposits from the effects of urbanization."

We believe that the removal of soil, rocks, and debris from flood control channels to *restore* them to their original contours does not fall within the legislative purposes of SMRA. Such work on flood control channels is the *opposite* of what SMRA was intended to regulate. SMRA contemplates a two step process: (1) surface mining operations and (2) the requisite reclamation plan to restore the land to a future beneficial use. Flood control channel maintenance is a one step process: the removal of soil, rock, and debris to restore the channel to its prior beneficial use. In short, the maintenance work in question does not degrade the channels so that reclamation is needed; rather, it improves the channels and in effect reclaims them.

Hence, to include flood control channel maintenance within the purview of SMRA would ignore much of SMRA with respect to such operations. No "reclamation" is required after the maintenance is performed, yet SMRA presupposes and requires reclamation as to the mining operations it regulates. Reclamation constitutes a major, mandatory portion of the legislation.

Additionally, we note that subdivisions (a) and (b) of section 2714 specifically exempt from the requirements of SMRA:

"(a) Excavations or grading conducted for farming or onsite construction or for the purpose of restoring land following a flood or natural disaster.

"(b) Onsite excavation and onsite earthmoving activities which are an integral and necessary part of a construction project that are undertaken to prepare a site for construction of structures, landscaping, or other land improvements, including the related excavation, grading, compaction, or the creation of fills, road cuts, and embankments, whether or not surplus materials are exported from the site, subject to all of the following conditions:

"(1) All required permits for the construction, landscaping, or related land improvements have been approved by a public agency in accordance with applicable provisions of state law and locally adopted plans and ordinances, including, but not limited to, Division 13 (commencing with Section 21000).

"(2) The lead agency's approval of the construction project included consideration of the onsite excavation and onsite earthmoving activities pursuant to Division 13 (commencing with Section 21000).

"(3) The approved construction project is consistent with the general plan or zoning of the site.

"(4) Surplus materials shall not be exported from the site unless and until actual construction work has commenced and shall cease if it is determined that construction activities have terminated, have been indefinitely suspended, or are no longer being actively pursued."

If the original construction of a flood control channel is exempt from the provisions of SMRA, it is reasonable to conclude that the restoration of the channel to its original contours is also exempt. (See Civ. Code, § 3536; *Reynolds* v. *State Board of Equalization* (1946) 29 Cal.2d 137, 140; *Hoshour* v. *County of Contra Costa* (1962) 203 Cal.App.2d 602, 608.)

We reject the argument that the specific exemptions in subdivision (i) of section 2714 regarding the Department of Water Resources and the State Reclamation Board necessarily mean that the removal of soil, rocks, and debris by a flood control district constitutes "surface mining operations." Subdivision (i) of section 2714 exempts from SMRA:

"(1) Surface mining operations conducted on lands owned or leased, or upon which easements or rights-of-way have been obtained, by the Department of Water Resources for the purpose of the State Water Resources Development System or flood control, and surface mining operations on lands owned or leased, or upon which easements or rights-of-way have been obtained, by the Reclamation Board for the purpose of flood control, if the Department of Water Resources adopts, after submission to and consultation with, the Department of Conservation, a reclamation plan for lands affected by these activities, and those lands are reclaimed in conformance with the standards specified in regulations of the board adopted pursuant to this chapter. The Department of water Resources shall provide an annual report to the Department of Conservation by the date specified by the Department of Conservation on these mining activities.

"(2) Nothing in this subdivision shall require the Department of Water Resources or the Reclamation Board to obtain a permit or secure approval of a reclamation plan from any city or county in order to conduct surface mining operations specified in paragraph (1). Nothing in this subdivision shall preclude the bringing of an enforcement action pursuant to Section 2774.1, if it is determined that a surface mine operator, acting under contract with the Department of Water Resources or the Reclamation Board on lands other than those owned or leased, or upon which easements or rights-of-way have been obtained, by the Department of Water Resources or the Reclamation Board, is otherwise not in compliance with this chapter."

The language of these particular exemptions was first added to SMRA in 1992 (Stats. 1992, ch. 1077, § 2.5), while SMRA has always provided in section 2715:

"No provision of [SMRA] or any ruling, requirement, or policy of the board is a limitation on any of the following:

"........................................................

"........................................................

"(c) On the power of any state agency in the enforcement or administration of any provision of law which it is specifically authorized or required to administer. . . ."

We thus believe that the specific exemptions now contained in subdivision (i) of section 2714 were enacted out of an abundance of legislative caution and not as a declaration that the work would otherwise constitute "surface mining operations." (See *Mono County* v. *Industrial Acc. Com.* (1917) 175 Cal. 752, 755; *Solvang Mun. Improvement Dist.* v. *Board of Supervisors* (1980) 112 Cal.App.3d 545, 556.)

We conclude that a flood control district's removal of soil, rocks, and debris from flood control channels and debris basins in order to maintain original construction contours is not a "surface mining operation" requiring a permit and the preparation of a reclamation plan under SMRA.

* * * * *