[No. C051641. Third Dist. Apr. 25, 2007.]

PATRICK MADDEN, Plaintiff and Appellant, v.
DEL TACO, INC., Defendant and Respondent.

COUNSEL

Hibbitt Tarbell & Koehler and Robert F. Koehler, Jr., for Plaintiff and Appellant.

Ericksen, Arbuthnot, Kilduff, Day & Lindstrom, Charles S. Painter and Reginald A. Dunn for Defendant and Respondent.

OPINION

**BUTZ, J.**—In this case we decide that allowing a concrete trash container to block wheelchair access to a restaurant entrance is a prima facie violation of the Americans with Disabilities Act of 1990 (hereafter ADA) (42 U.S.C. § 12101 et seq.; Pub.L. No. 101-336 (July 26, 1990) 104 Stat. 327). Any such violation also violates California law (Civ. Code, § 54 et seq.),[1] which requires full and equal access to a place of public accommodation for persons with disabilities.[2] Accordingly, we conclude the trial court erred in granting summary adjudication in favor of the owner of the restaurant and shall reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Patrick Madden sued restaurant owner Del Taco, Inc. Madden alleged he fell from his wheelchair and was injured when he attempted to pass a concrete trash container on a ramp leading to an entrance to a Del Taco restaurant. The trial court granted summary adjudication of no liability of Del Taco on Madden's claim that having the trash container on the path to an entrance of the restaurant violated his right as an individual with a disability to full and equal access to a public accommodation.

---

[1] Undesignated statutory references are to the Civil Code.

[2] "A violation of the right of an individual under the [ADA]" is a violation of both sections 54 and 54.1. (§§ 54, subd. (c), 54.1, subd. (d).)

*Madden's Allegations*

Madden's official form complaint (Code Civ. Proc., § 425.12) has three causes of action. The first is titled general negligence; the second, premises liability; and the third, Civil Code section 54 et seq. The third cause of action, the only one at issue on this appeal, contains the following allegations:

"17. [D]efendant was the owner/operator of a business establishment engaged in the business as a public establishment for the sale of food and drink to be consumed on the premises commonly known and designated as Del Taco Store #583, situated in the City of Sacramento, County of Sacramento, California.

"18. On August 3, 2002[,] plaintiff [a disabled person, wheelchair bound,] attempted to enter[] Store #583 by utilizing a store (south) entrance that presented handicap accessibility, with the intention and purpose of purchasing food and drink to be consumed on the premises. In attempting to use the south access walk, plaintiff was forced to navigate his wheelchair around a concrete trash barrel that was placed midway between the front of the Store and its south entrance. However, the walkway was too narrow with the addition of the trash barrel, and plaintiff's wheelchair went off the curb. Plaintiff fell over and out of his chair, hitting the drive-through pavement adjacent to the south entrance. Plaintiff sustained injuries to his person and property from this fall."

Del Taco answered with a general denial, asserting inter alia, as an affirmative defense, "that plaintiff was given the services, advantages, accommodations, facilities and privileges provided to other persons and was not discriminated against due to any disability."

*Del Taco's Motion for Summary Adjudication*

Del Taco moved for summary adjudication as to the third cause of action of Madden's complaint. Its separate statement of undisputed facts, in relevant part, was as follows (paragraph numbers and evidence references omitted, our paragraphing added):

"Defendant Del Taco, Inc. owns and operates Del Taco Store #583, located in Sacramento, California. Del Taco Store #583 has two separate entrances available to the public: a north entrance and a south entrance.

"The north entrance has two ramps: one ramp connecting the north entrance to the sidewalk and another ramp connecting the north entrance to the parking lot. The ramp connecting the north entrance to the sidewalk is

approximately 72 [inches] wide at its narrowest point. The ramp connecting the north entrance to the parking lot is approximately 71 [inches] wide at its narrowest point. There are two handicapped parking spaces in the north parking lot. There is a sign on the north side of the restaurant depicting a figure in a wheel chair [sic] and which states: 'van accessible.'

"The south entrance to Store #583 has one ramp that is approximately 48 [inches] wide at its narrowest point. The south entrance and the north entrance are approximately 31 feet and 4 inches apart, as measured along the sidewalk. The north entrance and south entrance are each used by a substantial number of patrons entering the restaurant.

"On August 3, 2002, Plaintiff Patrick Madden ('Madden') went to Store #583 in his wheelchair. Madden alleges that the south ramp was too narrow with the addition of a trash barrel. Madden alleges that he was forced to navigate his wheelchair around the trash barrel on the south ramp, causing him to fall off the ramp.

"On August 3, 2002, after this alleged accident occurred, Madden told a Del Taco employee that the trash barrel blocked his way. On August 3, 2002, after this alleged accident occurred, a Del Taco employee moved the trash barrel to a wider portion of the south ramp. Madden ordered his food at the counter. Madden ate his food at the restaurant. Madden then left the restaurant using his wheelchair to exit by way of the north ramp. Within two or three days following this incident, the trash barrel was removed from the south ramp entirely. No trash barrels have been placed on the south ramp generally for approximately three years. Store #583 was constructed in 1973. No triggering alterations have been undertaken since Store #583 was constructed."

*Madden's Declaration in Opposition*

Madden replied to Del Taco's statement of undisputed facts with the following declaration:

"1. I am the plaintiff in the above[-]entitled action;

"2. On August 3, 2005 [sic], the only entrance appearing to the public standing on the west sidewalk of Alhambra, at the southeast corner of the restaurant, is the south entrance to the restaurant as set forth in defendant's statement of facts. The south entrance faces south; ramp to the south entrance is east-west to the sidewalk on Alhambra; the north entrance faces north and cannot be seen from where the south entrance ramp meets the [west side] sidewalk of Alhambra;

"3. There are no signs directing the public to another entrance; there are no signs directing disabled persons to use another entrance;

"4. Accordingly, based upon the presentation of the physical attributes of the restaurant, I attempted to enter the only entrance appearing to me as I traveled in my wheel chair [sic] from south to north on Alhambra. I had just been to the Bank of America, south of the restaurant on the [west side] of Alhambra; I was traveling north on the [west side] of Alhambra. I was hungry; I had never been to this restaurant prior to this date; and, I attempted to enter the restaurant through the only entrance appearing to me;

"5. It appeared to me from the sidewalk that I would be able to negotiate around the barrel partially blocking the south entrance; the only entrance appearing to me. Hence, I proceeded up the south ramp and in attempting to negotiate about [sic] the trash barrel, I fell and injured myself;

"6. The trash barrel was immov[]able. It was a heavy, concrete 'square' barrel with a trash liner. It would have taken someone very strong to move the barrel. The manager I spoke to advised me she was not able to move it; but, that she would find someone who could move it."

*Del Taco's Objections to Madden's Opposition*

Del Taco objected to the opposition on the grounds it was untimely, unsigned when served, and that Madden's declaration was hearsay as to speaking to a manager and was insufficient as proof because it states that "those matters set forth on information and belief" were believed to be true.

*Trial Court's Ruling*

The trial court gave the following written explanation in granting Del Taco's motion for summary adjudication:

"Plaintiff's opposition is untimely. The opposition papers served on defendant were unsigned and were received by defendant's counsel on the date the Reply was due rather than 14 days before the hearing. The opposition papers filed in Department 53 were signed and filed on August 18, six days late. Defendant was prevented the opportunity to respond on the merits. In an abundance of caution, rather than striking the opposition as untimely, the court has reviewed the evidence submitted in oppos[i]tion to the motion to determine whether any triable issue of fact is raised. The court finds no triable issue of material fact. Plaintiff has filed no separate statement responding to defendant's separate statement. Plaintiff does not dispute that there was

another primary entrance providing wheelchair access or that the trash receptacle was temporary since it was moved shortly thereafter.

"The temporary placement of the trash barrel so as to partially block the entrance ramp of one of the primary entrances, while it may be a basis for a negligence or premises liability claim, does not form a basis for a claim for injunctive relief under [Civil Code sections 54 and 54.1]. An isolated or temporary hindrance to access does not give rise to a claim under the ADA or the state equivalent. (See *Foley v. City of Lafayette, Ind.* (7th Cir. 2004) 359 F.3d 925 [inoperable elevator and snow[-]covered ramp did not create a viable ADA claim].) The court finds as a matter of law that the placement of the trash receptacle was an isolated and temporary hindrance.

"The case at bar is distinguishable from [*People ex rel.*] *Deukmejian v. CHE, Inc.* (1983) 150 Cal.App.3d 123 [197 Cal.Rptr. 484], where the court found that the locked entrance which was uninviting and required disabled individuals to travel through the kitchen area was not a 'primary entrance.' "

Thereafter, Madden voluntarily dismissed the remaining causes of action of his complaint and judgment was entered against him.

## DISCUSSION

Madden contends that the trial court erred in granting summary adjudication. He argues that, as a matter of law, the trash container on the path to the south entrance of the Del Taco was a violation of the ADA, hence a violation of section 54. Del Taco replies that its only legal duty is to provide one primary entrance usable by persons in wheelchairs. Del Taco submits that because the obstruction was temporary, was removed immediately after the incident, and other access was available, a violation of section 54 is not presented. As we will explain, Del Taco's view of its duty is outmoded. Madden's contention of error has merit.

### I. Del Taco's Procedural Claims

Preliminarily, we address Del Taco's two procedural claims for upholding the summary adjudication. The first claim is that Madden failed to respond to Del Taco's separate statement of contended undisputed material facts. This failure only precludes new allegations of potential fact disputes, beyond those Madden actually raised in his opposition. (See, e.g., *Havstad v. Fidelity National Title Ins. Co.* (1997) 58 Cal.App.4th 654, 661 [68 Cal.Rptr.2d 487]; *Estate of Coate* (1979) 98 Cal.App.3d 982, 986 [159 Cal.Rptr. 794].) The question is whether, on the facts adduced, there is a triable claim.

Del Taco's second procedural claim is that Madden's separate statement in opposition to the motion for summary adjudication was not based· on admissible evidence, because his supporting declaration was made on information and belief as opposed to personal knowledge. Madden's declaration does conclude: "I declare under penalty of perjury that the·foregoing is true and correct, and those matters set forth on information and belief, I believe those to be true . . . ." However, this is immaterial for two reasons: First, there are no matters identified in the declaration as·set forth on information and belief. The material assertions of fact are matters facially within the ambit of Madden's personal knowledge. Thus, the reference in the declaration to "matters set forth on information and belief" is inconsequential. Second, where counsel fails to obtain rulings on evidentiary objections to opposition evidence in summary judgment proceedings, the objections are waived and are not preserved for appeal. (See, e.g.,· *Ann M. v. Pacific Plaza ·Shopping Center* (1993) 6 Cal.4th 666, 670, fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207].) Thus, ·we turn to the merits of Madden's claim.

## II. Madden's ADA Claim

██ Section 54, subdivision (a) provides that: "Individuals with disabilities . . . have the same right as the general public to the full and free use of . . . public places." Section 54.1 restates this as "full and equal access." The simple phrases are legal terms of art and they stand for a complex suite of duties. As noted in *People v. CHE*, section 54 has always drawn meaning from " 'a growing body of legislation intended to reduce or eliminate the physical impediments' to . . . 'participation [of ·physically handicapped persons] in community life' " (*People ex rel. Deukmejian v. CHE, Inc., supra*, 150 Cal.App.3d at p. 133 (*People v. CHE*), quoting *In re Marriage of Carney* (1979) 24 Cal.3d 725, 738 [157 Cal.Rptr. 383, 598 P.2d 36]), "i.e., the 'architectural barriers' against access by the handicapped to buildings, facilities, and transportation systems used by the public at large." (*Carney*, at p. 738.)

Del Taco asserts that because there has been no significant alteration to its building since it was constructed in 1973 its only duty is to provide one primary entrance usable by· individuals in wheelchairs, citing principally *People v. CHE, supra*, 150 Cal.App.3d at pages 130–131. At the time of *People v. CHE*, California law required.that one primary entrance be accessible to and usable by the physically handicapped. (*Ibid.*) This requirement

and the reasoning in *People v. CHE*—that duty to remove architectural barriers is limited to triggering alterations—have been overtaken, inter alia, by the enactment of the ADA in 1990.[3]

The ADA provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." (42 U.S.C. § 12182(a).)

■ Discrimination under the ADA, as to a place of public accommodation includes "a failure to remove architectural barriers . . . in existing facilities, . . . where such removal is readily achievable; . . ." (42 U.S.C. § 12182(b)(2)(A)(iv).) Thus, under the ADA, the duty to remove such barriers from public accommodations now extends beyond initial construction and significant alterations of existing structures. "A public accommodation shall remove architectural barriers in existing facilities, . . . where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense." (28 C.F.R. § 36.304(a) (2006), 56 Fed.Reg. 35544 (July 26, 1991).) Thus, the duty to remove architectural barriers to access to a public accommodation now extends to existing buildings regardless of a triggering alteration, where removal is readily achievable. (See, e.g., *Moeller v. Taco Bell Corp.* (N.D.Cal. 2004) 220 F.R.D. 604, 606 (*Moeller*).)[4]

The remaining question is whether an obstacle, like the Del Taco concrete trash container, blocking an accessible route of travel to an entrance, presents a breach of this duty under the ADA. The answer turns on title 28 Code of Federal Regulations part 36.211 (hereafter part 36.211), adopted pursuant to the ADA.

---

[3] California building standards law now requires standards no less stringent than those of the ADA. (Gov. Code, § 4450, subd. (c).) Under this law the duty to remove architectural barriers in existing public accommodation buildings requires that all ground floor entrances be made accessible to persons with disabilities, unless doing so would create an unreasonable hardship. (See Cal. Code Regs., tit. 24, pt. 2, §§ 1114B.1.1, 1133B.1.1.1.1.) Section 1114.B.1.1 prescribes compliance with section 1133B.1.1 et seq. for entrances when buildings are required to be accessible. Section 1133B.1.1.1.1 provides that all entrances and exterior ground floor entrance doors shall be made accessible, except, as to existing buildings, in cases of unreasonable hardship.

[4] The *Moeller* opinion relates the imposition of the duty as follows: "The accessibility requirements of [the United States Department of Justice's (DOJ)] Title III [regulations] and the DOJ Standards [for Accessible Design] vary depending on the dates that facilities were constructed or altered. . . . In facilities built prior to January 26, 1993 and not altered since January 26, 1992, architectural barriers are required to be removed where it is 'readily achievable' to do so. (42 U.S.C. § 12182(b)(2)(A)(iv).)" (*Moeller, supra,* 220 F.R.D. at p. 606.)

Part 36.211 provides:

"(a) A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the [ADA] or this part.

"(b) This section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs."

■ If "maintain in operable working condition" includes keeping a ramp needed to access an entrance clear of obstacles, Del Taco's concrete trash container is a prima facie violation of the ADA. As we will show, the phrase "maintain in operable working condition" does include a duty to *keep such entrance access clear of obstacles*.

When the federal regulations were adopted, the DOJ published a preamble containing a section-by-section analysis and response to comments on the draft version. (DOJ, appen. B, Preamble to Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 28 C.F.R. pt. 36 (2006) p. 680, 56 Fed.Reg. 35544 (July 26, 1991) (hereafter DOJ analysis).) The DOJ analysis of part 36.211 shows it extends to moveable obstacles.[5] It lists as examples of failure to "maintain in operable

---

[5] The DOJ analysis of part 36.211 states in relevant part as follows at page 701:

"[Part] 36.211 provides that a public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the [ADA] or this part. The [ADA] requires that, to the maximum extent feasible, facilities must be accessible to, *and usable by*, individuals with disabilities. This section recognizes that it is not sufficient to provide features such as accessible routes, elevators, or ramps, if those features are not maintained in a manner that enables individuals with disabilities to use them. Inoperable elevators, locked accessible doors, or 'accessible' routes that are obstructed by furniture, filing cabinets, or potted plants are neither 'accessible to' nor 'usable by' individuals with disabilities.

"Some commenters objected that this section appeared to establish an absolute requirement and suggested that language from the preamble be included in the text of the regulation. It is, of course, impossible to guarantee that mechanical devices will never fail to operate. Paragraph (b) of the final regulation provides that this section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs. This paragraph is in tended to clarify that temporary obstructions or isolated instances of mechanical failure would not be considered violations of the [ADA] or this part. However, allowing obstructions or 'out of service' equipment to persist beyond a reasonable period of time would violate this part, as would repeated mechanical failures due to improper or inadequate maintenance. Failure of the public accommodation to ensure that accessible routes are properly maintained and free of obstructions, or failure to arrange prompt repair of inoperable elevators or other equipment intended to provide access, would also violate this part." (Italics added.)

working condition" " 'accessible' routes that are obstructed by furniture, filing cabinets, or potted plants."

The trial court was not informed about the DOJ analysis of part 36.211.[6] Relying on *Foley v. City of Lafayette, Ind., supra,* 359 F.3d 925 (*Foley*), it decided that, as a matter of law, an obstacle of this kind is an isolated and temporary hindrance and does not give rise to a claim under the ADA. This view is untenable in light of the explanation in the DOJ analysis that violation of part 36.211 includes "[f]ailure of the public accommodation to ensure that accessible routes are . . . free of obstructions." (DOJ analysis, *supra,* at p. 701.)

*Foley* addressed federal injunctive relief based on a single incident of failure to remedy promptly blocked access, i.e., to clear snow from ramps and to repair an elevator. The *Foley* majority decided that under a regulation parallel to part 36.211, "occasional elevator malfunctions, unaccompanied by systemic problems of poor maintenance policy or frequent denials of access, do not constitute violations." (*Foley, supra,* 359 F.3d at p. 930.)

*Foley* is inapposite for two reasons: First, in this case the relief sought is damages, available under California law for a single incident (§ 54.3). For this relief there is no requirement to show a need to prevent future misconduct. The second distinction is that in *Foley* the defendant did not cause the obstruction of access; the claim was failure to repair or perform maintenance promptly enough. (*Foley, supra,* 359 F.3d at p. 929.) Here the access obstruction, placing the concrete trash container on the ramp, appears to be a result of the affirmative conduct of Del Taco. This does not fit under the exception clause of part 36.211(b). It is not an "interruption[] in . . . access due to maintenance or repairs."

For the foregoing reasons, the trial court erred in granting the motion for summary adjudication.

---

[6] Madden's page and a half memorandum in the trial court cites a single authority, *People v. CHE, supra,* 150 Cal.App.3d 123. His briefing on appeal is also bereft of pertinent authority. Indeed, not until the day before oral argument in this court, when he filed a request for judicial notice, did he offer any of the specific federal statutory and regulatory text we rely on in this opinion. We grant the belated request for judicial notice in view of the public importance of the issue.

## DISPOSITION

The judgment is reversed. For the reasons given in footnote 6, *ante*, the parties shall bear their own costs of this appeal. (Cal. Rules of Court, rule 8.276(a)(4); see 9 Witkin, Cal. Proc. (4th ed. 1997) Appeal, §§ 807–808, pp. 836–838.)

Sims, Acting P. J., and Cantil-Sakauye, J., concurred.