[No. C000872. Third Dist. Jan. 9, 1989.]

JAMES DONALD, Plaintiff and Appellant, v.
SACRAMENTO VALLEY BANK et al., Defendants and
Respondents.

**COUNSEL**

Paul Rein and Bryce Anderson for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Beverly Tucker, Deputy Attorney General, and Arlene Mayerson as Amici Curiae on behalf of Plaintiff and Appellant.

Boyden, Cooluris, Hauser & Saxe and David Anderson for Defendants and Respondents.

**OPINION**

**CARR, J.**—In this appeal, we determine that Sacramento First National Bank and its predecessor Sacramento Valley Bank were and are required to provide wheelchair access to the automatic teller machine (ATM) located at its banking facility in Sacramento.

Plaintiff James Donald appeals from summary judgments entered in favor of defendants Sacramento Valley Bank and Sacramento First National Bank. Plaintiff filed a complaint for damages and injunctive relief, alleging the banks violated handicap access laws (Health & Saf. Code, § 19955 et seq.; Gov. Code, § 4450 et seq.) and discriminated against him in violation

of the Unruh Civil Rights Act by failing to provide wheelchair access to an ATM (Civ. Code, § 54 et seq.). The trial court found defendants could not be liable for violating handicap access laws as there was no specific regulation requiring ATM accessibility. The court also held defendants could not be liable for civil rights violations in the absence of a violation of the structural regulations. Plaintiff contends the trial court misinterpreted the applicable statutes and regulations. We agree and shall reverse the summary judgments.

## Factual and Procedural Background

The facts of this case are largely undisputed. Plaintiff is a quadriplegic confined to a wheelchair. In February 1985, he filed a complaint for damages and injunctive relief against Park Executive Building and its owners, Prudential Insurance Company and PIC Realty, and their tenants, Sacramento Valley Bank[1] and others, alleging they had willfully failed to comply with handicap access laws pursuant to Health and Safety Code section 19955 et seq., and discriminated against him on the basis of his handicap in violation of Civil Code section 54.1. The complaint was framed in three causes of action. In the first cause of action, plaintiff alleged the owners and tenants failed to provide access to the building and related facilities in violation of Health and Safety Code sections 19955 and 19956, which incorporate by reference Government Code section 4450 et seq. The applicable sections of the Government Code require wheelchair access in conformance with specifications prescribed in the American Standards Association's specifications adopted in 1961 (hereinafter ASA standards). Plaintiff alleged the building, which was constructed after July 1, 1970, the effective date of Health and Safety Code section 19955 et seq., did not comply with the statutes and ASA standards. In his second cause of action, plaintiff alleged the owners and tenants unlawfully discriminated against him on the basis of his handicap in violation of Civil Code section 54 et seq., which provides that handicapped persons are entitled to full and equal access to all public facilities. In the third cause of action, plaintiff sought injunctive relief to force the owners and tenants to provide access to the building and related facilities.

Park Executive Building, Prudential Insurance Company and PIC Realty, the building owners, were dismissed from the case after they agreed to construct a wheelchair ramp to the main entrance to the building and did so construct the ramp.

Plaintiff continued his suit against Sacramento Valley Bank, alleging it violated the law in refusing to provide access to its ATM machine. The

[1] The complaint erroneously named as a defendant "Sacramento Bank." Sacramento Valley Bank was later served as Doe 15.

ATM machine was installed in 1975 on the side entrance of the building by a prior tenant, American Bank. At that time, the entrance was accessible to the building from the street only by a set of steps. The owners of the building authorized the construction of a step-up platform for the ATM. Sacramento Valley Bank leased the premises in 1981 and took over the ATM machine. In 1982, a new ATM computer was installed without modification to the platform or to the steps leading to the sidewalk.

In 1985, Sacramento Valley Bank merged with the present tenant, Sacramento First National Bank. In July 1986, after the wheelchair ramp to the main entrance was completed, plaintiff opened an account with Sacramento First National Bank. He received an ATM card.

Plaintiff served Sacramento First National Bank as a defendant and continued his suit against the two banks (hereinafter collectively designated defendants), urging they violated the statutory schemes and unlawfully discriminated against him because of his physical handicap by failing to provide access to the ATM.

Sacramento Valley Bank filed its motion for summary judgment, alleging in its statement of undisputed facts, which plaintiff did not oppose, that the building was constructed in 1972, the ATM was installed in 1975 by American Bank, and the ATM computer was replaced in 1982 by Sacramento Valley Bank without modification to the steps or platform. Noting the handicap access laws required compliance with regulations in effect at the time a facility was built, the bank contended it was entitled to summary judgment on the first cause of action as the 1975 regulations and incorporated ASA standards did not require ATM accessibility.[2] Sacramento Valley Bank argued it was also entitled to summary judgment on the second and third causes of action on the basis that it could not be liable under the civil rights statutes (Civ. Code, § 54 et seq.) as the ATM was not a "public accommodation or facility" subject to the statutes and that, in any event, the civil rights statutes did not authorize an independent cause of action absent a violation of a structural regulation. Alternatively, the bank asserted it could not be liable under any theory as plaintiff lacked standing to sue the bank because he was never a depositor or a customer and the bank had no responsibility for areas of the building external to its leasehold.

In opposing the motion, plaintiff contended the statutory scheme of the handicap access laws and the civil rights statutes required that all facilities be accessible to the handicapped. Urging the ATM was a "public facility" to which both the handicap access and civil rights laws applied, plaintiff

---

[2] The building permit for the ATM and platform was issued in July 1975.

asserted the lack of a specific regulation governing ATM's did not negate any duty to make ATM's accessible to the handicapped. Plaintiff further alleged Sacramento Valley Bank was estopped to assert he lacked standing to sue since "illegal barriers to access" during the period of time the bank was a tenant in the building had prevented plaintiff from entering the bank to apply for an account. In support thereof plaintiff filed an affidavit stating he had been unable to enter the building until the spring of 1986, after which Sacramento Valley Bank was no longer a tenant.

After the trial court indicated it was inclined to grant the bank's motion because the applicable regulations did not mention ATM's, plaintiff contended the ASA standards governing accessibility of walkways leading to public facilities applied to the ATM because the ATM was a public facility.[3] The bank's position was that the ATM was not a public facility to which the statutes and regulations applied.

The trial court found the ATM was a "public facility" within the meaning of the statutes but that the regulations concerning walkways were inapplicable. It concluded Sacramento Valley Bank had not violated the handicap access statutes because, at the time the ATM was installed, there was no separate architectural regulation or standard requiring ATM accessibility. Citing *Marsh* v. *Edwards Theatres Circuit, Inc.* (1976) 64 Cal.App.3d 881 [134 Cal.Rptr. 844], the court concluded the bank could not be liable for any civil rights violation absent a violation of a structural improvement regulation.[4] Without expressly deciding whether plaintiff had standing to sue Sacramento Valley Bank, the court granted the motion for summary judgment.

---

[3] Plaintiff also contended regulations relating to banks set out in title 24 of the former California Administrative Code applied to require ATM accessibility. The trial court found these regulations, which were effective in 1982, did not apply to the ATM because they could not operate retroactively to 1975, and the modification to the computer in 1982 was not a modification sufficient to require compliance with those regulations. Plaintiff does not argue the court erred in this finding.

[4] In *Marsh,* a quadriplegic plaintiff sued defendant Edwards Theatre Circuit, Inc. for discrimination under Civil Code sections 52 and 54 et seq. The theatre had been built in 1968 in conformance with then applicable building laws and contained no special facilities for persons in wheelchairs. The trial court awarded plaintiff $250 statutory damages pursuant to Civil Code section 52. The Court of Appeal reversed, finding Civil Code section 54.1, entitling equal access to public accommodations to the disabled, and section 54.3, making it a misdemeanor to deny or interfere with admittance by the disabled, were exclusive remedies and did not create a private cause of action for compensatory or punitive damages. The *Marsh* court further held Government Code section 4450 and Safety Code section 19955 et seq., disclosed a legislative intent that affirmative conduct to render facilities accessible was required only on construction of new facilities or on the repair and alteration of existing facilities in the area of specific alteration or repair. In response to the *Marsh* case, the Legislature added Civil Code section 55, authorizing a private cause of action to enjoin statutory violations of section 54.1.

Following the order, defendant Sacramento First National Bank filed its motion for summary judgment on the ground it could not be liable since the ATM remained unchanged after being acquired from Sacramento Valley Bank. Utilizing the same reasoning, the trial court granted the motion. This appeal followed.

## DISCUSSION

On appeal, plaintiff contends the trial court erred in granting both summary judgment motions as it erroneously concluded the handicap access laws and applicable ASA standards did not require ATM accessibility. Plaintiff also contends the court misinterpreted the *Marsh* case by finding Civil Code section 54.1 could not provide an independent cause of action absent a finding of a violation of a structural improvement regulation.

Two briefs have been filed on behalf of plaintiff by Amici Curiae Disability Rights Education and Defense Fund, Inc., and the Attorney General. Amici contend the clear language of the handicap access statutes require ATM accessibility despite the fact the regulations do not mention ATM's.[5] Amici assert this interpretation is consistent with legislative intent and that the regulations cannot operate to narrow the scope of the statutory scheme.

Defendants contend the trial court properly found the banks did not violate the handicap access laws in the absence of a separate regulation specifying a requirement of ATM accessibility. From this, the banks conclude they cannot be liable for civil rights violations and the summary judgments were properly granted. Alternatively, defendants reiterate the arguments that (1) the ATM is not a public facility; (2) the banks are not responsible for areas outside their leasehold; and (3) plaintiff lacks standing to sue Sacramento Valley Bank.

We find the absence of any reference to ATM's in the regulations and 1961 ASA standards is not dispositive. As we shall explain, we believe the language and intent of the 1975 handicap access law require ATM accessibility in accordance with standards of accessibility set out in the ASA standards, incorporated by reference in Government Code section 4451. In this case, the walkway to the ATM is inaccessible in violation of Health and Safety Code section 19955 et seq. because it does not conform to the requirements concerning "walks" as set out in ASA standard A 117.1/1961

---

[5] We note amicus curiae Disability Rights Education and Defense Fund includes in its brief factual information concerning the number of disabled persons and their special banking needs. In the absence of a request that we take judicial notice of this information, the material is not properly before us. In any event, the information is not relevant to the central issue in this appeal, which is a legal question of statutory construction.

paragraph 4.2. For this reason the trial court erred in granting defendants' summary judgments as to the first cause of action. Moreover, because defendants have not negated liability on the first cause of action, they necessarily have not negated every element of plaintiff's second and third causes of action. We therefore reverse the summary judgments.

I

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) ■ A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412 [42 Cal.Rptr. 449, 398 P.2d 785].) To succeed, the defendant must conclusively negate a necessary element of the plaintiff's case, and demonstrate that under no hypothesis is there a material issue of fact that requires the process of a trial. (*Id.,* at p. 417.)

In the present case, the trial court granted the summary judgment motions after concluding as a matter of law that none of plaintiff's asserted causes of action could prevail. ■ Since the construction of the statutory schemes is a legal question, we are not constricted by the conclusions of the trial court. (Evid. Code, § 310; *Neeley* v. *Board of Retirement* (1974) 36 Cal.App.3d 815, 819 [111 Cal.Rptr. 841].) We independently examine the matter in accordance with well-established principles of statutory construction.

■ The fundamental rule to be applied is to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) ■ Moreover, "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect." (*Moore* v. *Panish* (1982) 32 Cal.3d 535, 541 [186 Cal.Rptr. 475, 652 P.2d 32].) ■ Statutes relating to the same subject matter are to be read together insofar as reasonably possible. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 6-7 [128 Cal.Rptr. 673, 547 P.2d 449].)

■ Applying these rules to the instant case, we find the court erred in its interpretation of the handicap access statutes and accompanying regulations. Our construction of the legislative schemes commences with Civil Code section 54 et seq., enacted in 1968, which declares, in part, that all physically handicapped persons are entitled to the same right as the able-bodied to full and free use of public facilities and places. (Civ. Code, § 54.)

Section 54.1 of the Civil Code provides in relevant part: "(a) Blind persons, visually handicapped persons, deaf persons, and *other physically disabled persons shall be entitled to full and equal access, as other members of the general public, to accommodations,* advantages, *facilities,* and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats or any other public conveyances or modes of transportation, telephone facilities, hotels, lodging places, *places of public accommodation,* amusement or resort, *and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation,* . . ." (Italics added.) Civil Code section 55, enacted in 1974, authorizes private injunctive relief for violations of Civil Code section 54.1.

To give meaning to the public accommodation law prohibiting discrimination against the handicapped, the Legislature enacted statutory schemes giving handicapped persons access to and use of public buildings constructed with public funds (Gov. Code, §§ 4450-4458) and public buildings constructed with private funds. (Health & Saf. Code, §§ 19955-19959.) The Unruh Civil Rights Act (Civ. Code, § 51) prohibited all forms of arbitrary discrimination by a business establishment. These various legislative schemes have been construed together. (See *People* ex rel. *Deukmejian* v. *CHE, Inc.* (1983) 150 Cal.App.3d 123, 131-135 [197 Cal.Rptr. 484].)

The principal statutory scheme regarding access to and use of public facilities by disabled persons is found in Government Code sections 4450 through 4458. Those sections direct the state architect to adopt as minimum standards of accessibility regulations concerning handicap access to buildings and related facilities. (Gov. Code, §§ 4450, 4452.) As relevant to this appeal, section 4450 provided in 1975: "4450. It is the purpose of this chapter to insure that all buildings, structures, sidewalks, curbs, and related facilities, constructed in this state by the use of state, county, or municipal funds, or the funds of any political subdivision of the state shall be accessible to and usable by, the physically handicapped. The State Architect shall adopt by regulation standards for making buildings, structures, and related facilities accessible to and usable by the physically handicapped. The regulations shall impose the same requirements for buildings and structures as are contained in pertinent provisions of the latest edition of the Uniform Building Code, as adopted by the International Conference of Building Officials, and shall contain such additional requirements relating to sidewalks, curbs, and other related facilities as the State Architect determines are necessary

to assure access and usability for the physically handicapped.[6] (Stats. 1974, ch. 995, § 1, p. 2103.)

Not all public buildings are subject to this legislative scheme, however. Generally, the requirements for access and use are applicable only to "buildings and facilities stated in Section 4450 intended for use by the public, which have any reasonable availability to, or usage by, physically handicapped persons, . . ." (Gov. Code, § 4451, subd. (a).) Moreover, physical changes in existing buildings were not required by this statutory scheme; only new construction and alterations, structural repairs or additions to existing buildings made after the effective date of the legislation fell within the scope of the legislation. (Gov. Code, § 4456; *Marsh* v. *Edwards Theatres Circuit, Inc., supra*, 64 Cal.App.3d at p. 888.)

Most importantly, Government Code section 4451 required public buildings and related facilities to adhere to existing ASA standards. The statute provided in relevant part: "(c) Except as otherwise provided by law, buildings, structures, sidewalks, curbs, and related facilities subject to the provisions of this chapter or Part 5.5. (commencing with Section 19955) of Division 13 of the Health and Safety Code shall conform to the regulations adopted pursuant to Section 4450 which are in effect on the date a building permit is issued therefor. . . . [¶] *All buildings, structures, and related facilities which are required to conform to the American Standards Association Specifications A117.1-1961 prior to the effective date of the regulations adopted by the State Architect shall continue to conform to the American Standards Association Specifications A117.1-1961. . . .* " (Italics added; Stats. 1974, ch. 995, § 2, p. 2104.)

Health and Safety Code sections 19955 through 19959 require that "public accommodations or facilities constructed in this state with private funds [shall] adhere to the provisions of Chapter 7 (commencing with Section 4450) of Division 5 of Title 1 of the Government Code." (Health & Saf. Code, § 19955, subd. (a).) The facilities subject to this legislation are described with particularity (Health & Saf. Code, §§ 19955-19956.5), with the requirements applicable only with respect to buildings constructed after

---

[6]The state architect adopted regulations pertaining to project approval in November 1968. (Former Cal. Admin. Code, tit. 24, div. T-24 (§ T24-101 et seq.).) Those regulations were repealed in part in 1970 and 1971. The substance of the regulations, however, was incorporated into title 24 (former Cal. Admin. Code, tit. 24, div. T-21 (§ T21-81 et seq.). Division T-21 remained in effect until 1984 and was effective between 1975 and 1982. As relevant to this appeal, those provisions merely required all public buildings and facilities must comply with ASA standards. (See former Cal. Admin. Code, tit. 24, div. T-21, § T21-83(b).) In December 1981, new regulations concerning requirements for handicapped accessibility were added to the State Building Code (see former Cal. Admin. Code, tit. 24, pt. 2, ch. 2-71.) Those regulations remain effective.

*July 1, 1970,* or to the repair and alteration of existing facilities after that date. (Health & Saf. Code, § 19959; *Marsh* v. *Edwards Theatres Circuit, Inc., supra,* 64 Cal.App.3d at p. 888.)[7] Significantly, the provisions of Government Code section 4451, requiring all specified buildings and facilities to conform to the 1961 ASA standards, were incorporated by Health and Safety Code section 19955.

The ASA standards to which the statutory schemes referred did not specify ATM's were subject to accessibility requirements. The omission to specifically refer to ATM's in the 1961 ASA standards may reasonably have resulted from the fact, undisputed by the parties, that at the time these standards were promulgated ATM's were only a gleam in some banker's eye. However, the 1961 ASA standards delineated in detail architectural specifications for access to buildings and related facilities, including walkways and doors, and for access within buildings. As relevant to this appeal, the ASA standards specified that walks be accessible as follows: "4.2 Walks [¶] 4.2.1 Public walks should be at least 48 inches wide and should have a gradient not greater than 5 percent.

"4.2.2 *Such walks shall be of a continuing common surface, not interrupted by steps or abrupt changes in level.*

"4.2.3 Wherever walks cross other walks, driveways, or parking lots they should blend to a common level.

"  . . . . . . . . . . . . . . . . . .

---

[7] As relevant to this appeal, the applicable handicap access statutes provided: Health and Safety Code section 19955, subdivision (a): "The purpose of this part is to insure that public accommodations or facilities constructed in this state with private funds adhere to the provisions of Chapter 7 (commencing with Section 4450) of Division 5 of Title 1 of the Government Code. For the purposes of this part 'public accommodation or facilities' means a building, structure, facility, complex, or improved area which is used by the general public and shall include auditoriums, hospitals, theaters, restaurants, hotels, motels, stadiums, and convention centers." Section 19955.5: "All passenger vehicle service stations, shopping centers, offices of physicians and surgeons, and office buildings constructed in this state with private funds shall adhere to the provisions of Chapter 7 (commencing with Section 4450) of Division 5 of Title 1 of the Government Code. As used in this section, 'office building' means a structure wherein commercial activity or service is performed or a profession is practiced, or wherein any combination thereof is performed or practiced in all or the majority of such building or structure." Section 19956: "All public accommodations constructed in this state shall conform to the provisions of Chapter 7 (commencing with Section 4450) of Division 5 of Title 1 of the Government Code; and except that in multistoried buildings, floors or levels above the first floor or ground level are exempt from the requirements of this chapter if a reasonable portion of all facilities and accommodations normally sought and used by the public in such a building are accessible to, and usable by, the physically handicapped."

"4.2.4 A walk shall have a level platform at the top which is at least 5 feet by 5 feet, if a door swings out onto the platform or toward the walk. This platform shall extend at least 1 foot beyond each side of the doorway.

"4.2.5 A walk shall have a level platform at least 3 feet deep and 5 feet wide, if the door does not swing onto the platform or toward the walk. This platform shall extend at least 1 foot beyond each side of the doorway." (Italics added, fns. omitted.)

The ASA standards define walks in section 2.12 as follows: "2.12 Walk, Walks. Because the terms 'walk' and 'walks' have a multitude of meanings and uses, their use in this text is clearly *defined as a predetermined, pre-pared-surface, exterior pathway leading to or from a building or facility, or from one exterior area to another, placed on the existing ground level and not deviating from the level of the existing ground immediately adjacent.*" (Italics added.)

Reading these statutory schemes together, we find this ATM violates accessibility requirements set out in the ASA standards and therefore violates the handicap access laws pursuant to Health and Safety Code section 19955 et seq. First, we reject defendants' argument that the ATM is not a "public facility" within the meaning of Health and Safety Code section 19955. That section defines a public facility as "building, structure, facility, complex, or improved area which is used by the general public. . . ." (Health & Saf. Code, § 19955.)[8] Also unavailing is defendants' argument that an ATM is distinguishable from a bank itself since cardholders comprise a "subset" of bank account holders who are themselves a subset of all bank customers. Rather, we perceive the ATM is an important adjunct to the bank and constitutes a place where specific services are provided when the main facility is closed and not open for banking business. Second, we believe the absence of any express reference to ATM's in the 1961 ASA standards does not render the general standards inapplicable. The ASA standards apply to "all buildings and facilities used by the public" and list as their purpose "to make all buildings and facilities used by the public accessible to, and functional for, the physically handicapped, . . ." (ASA standard A117.1/1961 ¶ 1.2.)[9] The ATM is a public facility which falls

---

[8] The 1961 ASA standards also specify the specifications apply to all buildings and facilities used by the public. As relevant to this appeal, the 1961 ASA standards provided: "1.1 Scope [¶] 1.1.1 This standard applies to all buildings and facilities used by the public. It applies to temporary or emergency conditions as well as permanent conditions. It does not apply in private residences. [¶] 1.2 Purpose. This standard is intended to make all buildings and facilities used by the public accessible to, and functional for, the physically handicapped, to, through, and within their doors, without loss of function, space, or facility where the general public is concerned."

[9] Defendants urge their argument is supported by the result in 65 Ops.Cal.Atty.Gen. 72 (1982). In that case, the Attorney General found a recreation building in a mobilehome park,

within the scope of the standards. Moreover, the standards of accessibility set out in the ASA specifications are not met in this case because the walkway to the ATM is interrupted by steps in violation of paragraph 4.2.2.[10] The ATM is inaccessible in violation of the applicable handicap access laws and the trial court erred in concluding otherwise.

## II

■ Plaintiff also contends the court erred in finding defendants could not be liable for civil rights violations (Civ. Code, § 54 et seq.) in the absence of a showing defendants violated a structural improvement regulation. Plaintiff contends the court interpreted the *Marsh* case in an unduly restrictive manner. Our finding that handicap accessibility requirements applied to the ATM is dispositive and it is unnecessary to determine whether the civil rights statutes create an independent cause of action absent any statutory violation.

We note further that the ATM constitutes a public accommodation or facility so as to subject it to the statutes. The definition of public accommodations set out in Civil Code section 54.1 is even broader than that specified in Health and Safety Code section 19955 as the civil rights statutes pertain to any "places to which the general public is invited, . . ." (Civ. Code, § 54.1.) Defendants have not negated any element in the second cause of action and the summary judgment was improperly granted. Since defendants may be liable for civil rights violations, plaintiff is entitled to pursue his third cause of action for injunctive relief. (Civ. Code, § 55.)

## III

■ As a last resort, defendants assert the summary judgments must be affirmed because they have no legal duty to provide access to areas outside their leasehold. In addition, Sacramento Valley Bank asserts summary judgment was properly granted in its favor since plaintiff allegedly has no standing to sue that bank because he was never a customer. These arguments

although used by residents and their guests, did not constitute a "public facility" so as to subject it to handicap accessibility requirements under Health and Safety Code section 19955. We perceive there is a significant difference between a bank and a mobilehome park.

[10] Defendants urge the specifications concerning walks do not apply to the ATM, alleging the machine is "not on ground level" because the platform is raised and physically removed from the sidewalk. The argument is specious. The platform is not a separate story; it is part of the ground floor of the building and serves as an adjunct to the bank. Under defendants' reasoning, the bank itself would not be subject to the ASA standards since it is raised above ground level by the steps leading into the entrance of the building. The fact that the ATM platform is "physically removed" from the sidewalk is precisely the reason the configuration violates accessibility standards relating to walks approaching public facilities.

cannot serve as a basis to sustain the summary judgments as triable issues of fact remain as to both. The question of whether defendants' leases encompassed the ATM machine remains a disputed factual issue. The standing issue was not resolved at the hearing and disputed facts exist. Plaintiff introduced evidence he was unable to open an account at Sacramento Valley Bank during the time it was a tenant in the building. Sacramento Valley Bank insinuated a potential customer could open an account by mail. The issue remains unresolved. Since triable issues of fact remain, the summary judgments were improperly granted. (Code Civ. Proc., § 437c.)

## DISPOSITION

The summary judgments are reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Puglia, P. J., and Evans, J., concurred.