74 Cal.Rptr.2d 684 (1998)
63 Cal.App.4th 510
Mark HANKINS, Plaintiff and Appellant,
v.
EL TORITO RESTAURANTS, INC., et al., Defendants and Appellants.
Nos. A074012, A075621.
Court of Appeal, First District, Division Two.
April 22, 1998.
Rehearing Denied June 21, 1998.
Review Denied July 8, 1998.
*686 Sidney J. Cohen, Paul L. Rein, Oakland, Bryce C. Anderson, Concord, for Plaintiff and Appellant Mark Hankins.
Guy Wallace, Oakland, as Amicus Curiae on behalf of Plaintiff and Appellant.
Gregory F. Hurley, Irvine, Francis T. Donohue III, for Defendants and Appellants El Torito Restaurants.
Certified For Partial Publication[*]
HAERLE, Acting Presiding Justice.

I. INTRODUCTION
This appeal and cross-appeal arise from litigation between Mark Hankins, a disabled *687 man, and the owners and operators of an El Torito restaurant located in Burlingame, California.[1] The litigation was precipitated by Hankins's visit to the restaurant in October 1991. During that visit, restaurant employees refused to permit Hankins to use an otherwise accessible "employee restroom." Hankins sought damages and injunctive relief under state and federal law for this denial of access and for other alleged violations of state and federal laws which prohibit discrimination on the basis of a disability and prohibit denying disabled individuals access to public accommodations.
After a court trial, the court found El Torito's refusal to permit Hankins to use the restroom violated California law and awarded Hankins $80,000 damages. The court also enjoined El Torito from requiring that a recently installed wheelchair lift be accessed and controlled only by restaurant employees. El Torito appeals each of these rulings. El Torito also contends the trial court erred by awarding Hankins's expert witness fees as part of his damages.
Hankins cross-appeals, alleging the trial court erred by concluding that (1) the Burlingame restaurant was in compliance with state disability access laws as of the date of his October 1991 visit, and (2) Hankins does not have standing to assert a violation of Title III of the federal Americans with Disabilities Act. (42 U.S.C.A., §§ 12181 et seq.)

II. STATEMENT OF FACTS
In 1988, Hankins was in an accident which resulted in amputation of his right leg several inches below his knee. Wearing his prosthesis causes Hankins periodic problems and pain which sometimes requires that he use crutches or a wheelchair. Hankins was using crutches when he and his fiancee went to the El Torito restaurant in Burlingame on October 23, 1991.
At the time of Hankins's visit, there were six steps at the entrance of the restaurant. Three steps separated the main dining room of the restaurant from the lower bar level. And, there were eighteen steps from the main level to the second floor of the building where the public restrooms were located. The building did not have an elevator. A sign near the front entrance of the restaurant warned: "Premises Not Wheelchair Equipped."
With his fiancee's assistance, Hankins climbed the six stairs leading to the restaurant entrance. At some point during the evening, Hankins had to use the restroom. Hankins explained to the restaurant manager that he could not climb the eighteen stairs leading to the public restrooms and asked if he could use the employee restroom on the first floor. The manager refused Hankins's request and told him to go use the restroom in another restaurant which was located next door.
Using his crutches, Hankins made his way out of the restaurant (up the three interior stairs and down the six exterior stairs) and across the approximately 75 yards of parking lot to the restaurant where the El Torito manager had directed him to go. That restaurant was not, however, handicapped accessible. On his way back to the El Torito restaurant, Hankins encountered several people in the El Torito parking lot. Unable to wait any longer, Hankins found a bush and relieved himself. Hankins was angered and humiliated by this experience.
Hankins filed his complaint against El Torito on August 10, 1992. He sought damages and injunctive relief for violations of various state disability access laws, state laws prohibiting discrimination on the basis of physical handicap or disability and the federal American with Disabilities Act. Hankins also sought punitive damages and attorney's fees. A court trial commenced on July 26, 1994, and the court issued its statement of decision on December 18, 1995.
The trial court found that the Burlingame restaurant was not in violation of California's disability access laws and regulations on October 23, 1991, the date of Hankins's visit. The court ruled that Hankins failed to prove that (1) the structure was already in violation of applicable access laws when El Torito *688 acquired it in 1984, (2) remodeling work performed in 1985 to convert the restaurant from a "Tia Maria" to an "El Torito" violated applicable access laws, or (3) the 1989 construction of a seawall between the restaurant building and San Francisco Bay required installation of access features inside the restaurant.
The trial court further ruled that, although the Burlingame restaurant was not in violation of applicable disability laws, El Torito breached its duty to Hankins as a disabled person and discriminated against him by refusing to permit him to "use the only available restroom facilities on the ground floor of the building, the employees facilities." The court awarded Hankins $80,000 as damages for this discriminatory act.
In ruling on Hankins's requests for injunctive relief, the court framed the issue as a question of whether handicapped access features installed by El Torito in the fall of 1992 (after litigation commenced) were "sufficient to comply with the applicable State Laws and Regulations governing handicapped access." The court ruled that the improvements were sufficient, "with the sole exception of the [wheelchair] lift" which was installed between the main entrance and the lower bar area of the restaurant. The court ruled that the lift was not sufficiently accessible to disabled persons because it could only be actuated by restaurant management.
The trial court entered judgment for El Torito on Hankins's claim for violation of the Americans with Disabilities Act because Hankins's visit to the restaurant occurred prior to the effective date of this federal law, which the court ruled was not retroactive.
The court denied Hankins's request for punitive damages but awarded him attorney's fees. In this regard, the court expressly accepted Hankins's argument that his complaint was the "substantial precipitating cause" of El Torito's actions in installing handicapped access features in the Burlingame restaurant.

III. THE APPEAL
El Torito contends the judgment against it must be reversed because the trial court erred by (1) concluding that El Torito's restroom policy violated Hankins's rights (2) enjoining El Torito from maintaining its policy with respect to use of the wheelchair lift, and (3) permitting Hankins to include his expert witness fees as recoverable costs.

A. The Restroom Policy
The precise statutory basis for the trial court's ruling that El Torito violated Hankins's rights by denying him access to an available restroom is unclear. In his complaint, Hankins alleged violations of the Unruh Civil Rights Act, codified at Civil Code sections 51 and 52, and also of Civil Code sections 54 et seq. The trial court found that El Torito violated Hankins's rights under "Civil Code § 51 et seq." It ruled that El Torito "breached its duty to Plaintiff as a disabled person," and awarded Hankins $80,000 in damages for the "discriminatory" acts of El Torito's employees. It also awarded attorney's fees pursuant to sections 54.3 and 55 of the Civil Code, both which expressly relate to violations of Civil Code section 54.
El Torito contends the judgment against it cannot be sustained because (1) the record does not establish a violation of Civil Code section 51 (hereafter section 51), and (2) the trial court's express findings affirmatively establish that El Torito did not violate Civil Code section 54.1, subdivision (a) (hereafter section 54.1(a)). Although the trial court could have been clearer in its ruling, we conclude the record supports findings that El Torito violated both section 51 and section 541(a).

1. Section 51
Section 51 states, in part; "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever. ¶ This section shall not be construed to confer any right or privilege on a person which is conditioned or limited by law or which is applicable alike to persons of every sex, color, race, *689 religion, ancestry, national origin, or disability." (Emphasis added.)
El Torito contends the judgment against it cannot be affirmed under section 51 because it did not intentionally discriminate against Hankins. "plaintiff seeking to establish a case under the Unruh Civil Rights Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act." (Harris v. Capital Growth Investors XIV (1991) 52 Cal.3d 1142, 1175, 278 Cal.Rptr. 614, 805 P.2d 873.) El Torito argues Hankins did not plead intentional discrimination, the trial court did not find intentional discrimination, and there was insufficient evidence of intentional discrimination.
Hankins did plead intentional discrimination by alleging a violation of section 51 in his third cause of action. Although sufficiency of the pleadings is not at issue here, we note that Hankins expressly alleged that El Torito "wrongfully and unlawfully denied accessible restroom facilities to physically handicapped persons," that it acted with "knowledge of the effect [its conduct] was having on physically disabled persons," and that Hankins was "discriminated against on the sole basis that he was physically disabled and on crutches." Thus, the issue of intentional discrimination was before the lower court. Further, although we agree the court's statement of decision could have been clearer, that decision includes a finding of intentional discrimination. It expressly states that damages are awarded for El Torito's "discriminatory conduct," and it imposes liability under "Civil Code § 51 et seq." Thus, we turn to the crux of El Torito's argument, that the record does not establish a section 51 violation.
Initially, we dispose of the semantic argument that El Torito is not guilty of discrimination at all. El Torito admits that Hankins was denied access to a restroom pursuant to company policy, but contends the policy was not discriminatory because it applied to all restaurant patrons. In other words, El Torito contends, all customers were denied access to the employee restroom. However, El Torito's policy was not, as it contends, to deny all patrons access to a restroom. Rather, a combination of its policy and the physical layout of its premises allowed patrons who were not physically handicapped to use a restroom while dining at the restaurant (the one on the second floor), but denied that same service to physically handicapped patrons even though there was a restroom on the premises (the one behind the kitchen) that a physically disabled person could otherwise use. El Torito's policy thus discriminated against disabled patrons.[2]
El Torito argues that Hankins did not prove discriminatory intent because the trial court expressly found that El Torito's policy was motivated health, safety and sanitation concerns and this finding establishes an absence of discriminatory intent as a matter of law. The trial court made no such finding. It merely acknowledged that El Torito argued that former Health and Safety Code section 27626 precluded it from permitting Hankins to use the employee restroom because Hankins would have to travel through a portion of the food preparation area to get there. Rejecting El Torito's alleged excuse, the trial court ruled that former *690 Health and Safety Code section 27626 did "not support that interpretation."
Section 27626 of the Health and Safety Code was repealed in 1995. At the time of the incident, it provided in pertinent part: "In each food establishment, there shall be provided clean toilet facilities in good repair for use by employees. The number of toilet facilities required shall be in accordance with local building and plumbing ordinances. Toilet facilities whose construction begins on or after January 1, 1985, and which are provided for use by patrons, shall be so situated that patrons do not pass through food preparation, food storage, or utensil washing areas." (former Health & Saf.Code, § 27626 (Deering 1988), Repealed by Stats.1995 ch. 415, § 170.)
The trial court reasoned that El Torito's purported concern that former Health & Safety Code section 27626 precluded it from letting any patron use the employee restroom did not justify its actions, i.e., "forcing Plaintiff to undertake an arduous and painful journey to another structure some distance away to relieve himself." We agree. Former Health & Safety Code section 27626 regulated the construction of toilet facilities from January 1, 1985, onward. The statute is irrelevant, not only because El Torito's employee restroom was constructed before January 1985, but also because it does not pertain to El Torito's policy of denying disabled individuals access to an otherwise available restroom facility.[3]
Finally, El Torito argues that it did not violate section 51 because its policy was a reasonable restriction rationally related to its business and the services it offers. "Although the Unruh Civil Rights Act proscribes `any form of arbitrary discrimination' [citation], certain types of discrimination have been denominated `reasonable' and, therefore, not arbitrary." (Koire v. Metro Car Wash (1985) 40 Cal.3d 24, 30, 219 Cal. Rptr. 133, 707 P.2d 195.) Thus, for example, "legitimate business interests may justify limitations on consumer access to public accommodations." (Harris v. Capital Growth Investors XIV, supra, 52 Cal.3d at p. 1162, 278 Cal.Rptr. 614, 805 P.2d 873 [discussing examples].)
El Torito claims that its policy was reasonable and justified by its concerns about sanitation, a compelling societal interest. Without any citations to the record (in violation of rule 15(a) of the California Rules of Court), El Torito claims that, "[t]o use the employee restroom, guests would have to pass through the area where large containers of fresh, partially prepared ingredients are kept (sliced cheese, sliced tomatoes, guacamole, pots of beans, soup stocks, etc.). Defendants are concerned that a guest returning from using the restroom would be tempted to sample food from the preparation bins which could result in widespread contamination among diners. The societal interest in avoiding contamination in areas where bulk foods are prepared is obvious and compelling." Even after Hankins pointed out El Torito's failure to identify any evidence supportive of this argument, El Torito declined to supply the requisite record support. In any event, we decline to find that an unsubstantiated and totally speculative concern that El Torito would be unable to prevent a patron from surreptitiously sampling food on the way to or from the restroom justifies denying a handicapped patron access to the only first-floor restroom on the premises.
In sum, the record supports a finding that El Torito intentionally discriminated against Hankins in violation of section 51.

2. Section 54.1(a)
Section 54.1(a) provides that disabled persons "shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities ... and privileges of all ... hotels, lodging places, places of public accommodation, amusement, or resort, and other places to which the general public is invited, subject *691 only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons."[4]
"To give meaning to the public accommodation law prohibiting discrimination against handicapped, the Legislature enacted Government Code section 4450 et seq. providing for the establishment of standards for buildings constructed with public funds designed to insure accessibility by the handicapped A year later, the Legislature expanded these requirements to facilities constructed with private funds ([former Health & Saf.Code,] § 19955 et seq.) and, with certain limited exceptions, required conformance the same standards set forth within Code section 4450 et seq." (People ex rel. Deukmejian v. CHE, Inc. (1983) 150 Cal.App.3d 123, 133, 197 Cal.Rptr. AM (CHE).) To clarify the parties' contentions and our conclusions, we refer to these statutory provisions and related regulations California's "structural access standards."
El Torito contends it is not liable to Hankins under section 54.1(a) because (1) the trial court expressly found that, on the day of the incident, the restaurant was in compliance with California's structural access standards, and (2) a plaintiff cannot prevail under section 54.1(a) unless it proves a violation these standards. Hankins responds that (1) the trial court did not hold that El Torito was in compliance with all relevant disability access standards, and (2) El Torito was in violation of a relevant standard, section 19955 of the former Health & Safety Code, on the day of the incident.
Although the statement of decision is vague in several respects, it clearly confirms El Torito's contention that the trial court made a finding of fact and law that the restaurant was not in violation of California's structural access standards on the day of the incident. In its statement of decision, the court posed the following question: "Was the El Torito Restaurant in Burlingame in violation of the requirements of the California Disability Access Laws and Regulations on October 23, 1991?" The court answered "no." After further explanation, the court concluded "the El Torito Restaurant in Burlingame was, in fact, not in violation of the applicable Laws of California at the time of the Plaintiffs incident on October 23, 1991." Thus, the issue is whether that finding by the trial court precluded it from imposing liability under section 54.1(a). El Torito so contends; Hankins avoids the issue by arguing there was a violation.[5]
Certainly, the owner of a public actions commodation whose violation of a structural access standard results in the denial of access to a handicapped individual is liable under Civil Code sections 54 et seq. (Marsh v. Edwards Theatres Circuit, Inc. (1976) 64 Cal.App.3d 881, 134 Cal.Rptr. 844 (Marsh), superseded by statute on another ground; City and County of San Francisco v. Grant Co. (1986) 181 Cal.App.3d 1085, 227 Cal.Rptr. 154; CHE, supra, 150 Cal.App.3d 123, 197 Cal.Rptr. 484; Donald v. Sacramento Valley Bank (1989) 209 Cal.App.3d 1183, 260 Cal. Rptr. 49 (Donald); Cafe Royak, supra, 218 Cal.App.3d at p. 183, 266 Cal.Rptr. 804.) But the issue we address is whether violation of a disability access standard is a prerequisite for imposing liability under Civil Code sections 54 et seq. We have found no case which squarely addresses this issue.[6]
Leading the cases upon which El Torito relies is Marsh, supra, 64 Cal.App.3d 881, *692 134 Cal.Rptr. 844. Marsh held that "California law which prohibits discrimination against the physically handicapped in access to public accommodations" does not "require the operator of such accommodations, absent specific legislation mandating it, to make structural modifications in order to facilitate access." (Id. at p. 886, 134 Cal.Rptr. 844.) The court recognized that concern about the impact of the design and construction of a building on accessibility led to the enactment of Government Code section 4450 and Health & Safety Code sections 19955 through 19956, statutes which led to the establishment of standards designed to ensure handicap accessibility. However, according to the court, these statutes evidence a clear legislative intent "that affirmative conduct [by the building owner] is required only when directed by those sections dealing with construction of new facilities or with the repair and alteration of existing facilities." (64 Cal. App.3d at p. 888, 134 Cal.Rptr. 844.)
Marsh may establish a rule that a structural impediment to access does not violate section 54.1 unless the impediment also violates a structural access standard. But any such rule and the reasoning that may sustain it is inapposite when the basis of a section 54.1(a) claim is the policy of the proprietor of a public accommodation rather than the design of the accommodation itself. Thus, Marsh and cases following it are irrelevant to the issue we address.
In the present case, El Torito admitted it had a policy of refusing to permit disabled individuals to use a restroom that already existed and was physically accessible. As a direct result of this policy, Hankins was forced to relieve himself in a public parking lot. Thus, the question we face is whether defendant violates section 54.1(a) by maintaining a policy, unrelated to any structural impediment, which results in the denial of full and equal access by a disabled individual to a public accommodation.
In answering this question, "[o]ur primary task is to ascertain the Legislature's intent so as to effectuate the purpose of the law." (Cafe Royale, supra, 218 Cal.App.3d at p. 176, 266 Cal.Rptr. 804.) `"[A] statute should be construed with reference to the entire statutory system of which it forms a part in such a way that harmony may be achieved among the parts [citations]...."' (Id. at p. 177, 266 Cal.Rptr. 804.) Many courts have recognized that California's disability access laws manifest a legislative intent to afford broad protection and maximize the incentive for compliance in order to achieve access for disabled individuals. (See, e.g., id. at pp. 176-178, 266 Cal.Rptr. 804; Isbister v. Boys' Club of Santa Cruz, Inc. (1985) 40 Cal.3d 72, 75-76, 219 Cal.Rptr. 150, 707 P.2d 212; Arnold v. United Artists Theatre Circuit, Inc. (N.D.Cal.1994) 866 F.Supp. 433, 437-439.) The broad language of sections 54.1(a) et seq. reflects that legislative intent and leads us to conclude that policies which deny disabled individuals full and equal access to public accommodations are easily encompassed by this broad statutory language.
Section 54.1(a) entitles disabled individuals to "full and equal access" subject only to limitations established by law. Further, "[l]iability under section 54.3 extends not only to those who violate section 54.1 but also to those who `interfere[] with the rights of an individual with a disability' under section 54.1." (Aikins v. St. Helena Hosp. (N.D.Cal. 1994) 843 F.Supp. 1329, 1340, quoting Civ. Code, § 54.3.)[7]
Civil Code section 54.3 contains an example of what constitutes "interfer[ance]" under the statute: "preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting *693 a disabled person." Although we address a different disability, the quoted example manifests a legislative intent to eliminate policy impediments as well as structural impediments to access.
In 1996, section 54.1 was amended to state that a "violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section...." (§ 54.1, subd. (d) as amended by Stats.1996, ch. 498, § 1.5.) We interpret this amendment as an acknowledgment by the Legislature of its intent that section 54.1 impose at least the same requirements as are imposed by the Americans with Disabilities Act (the ADA). Therefore, authority regarding the scope of the ADA is probative of the intended scope of section 54.1.
Under the ADA, owners and operators of places of public accommodation are required to make "reasonable modifications" in their practices, policies, or procedures or to provide "auxiliary aids and services" for people with disabilities unless such modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages and accommodations offered or would result in an "undue burden." (42 U.S.C.A., § 12182(b)(2)(A)(ii), (iii).)
The United States Department of Justice has issued illustrative examples of what the ADA requires. We find one example particularly relevant: "An individual requires assistance in order to use toilet faculties and his only companion is a person of the opposite sex. Permitting a person of the opposite sex to assist an individual with a disability in a toilet room designated for one sex may be a required reasonable modification of policy." (Department of Justice, Americans with Disabilities Act, Title III Technical Assistance Manual, § 4.2100, p. 24 (1994 Supp.).) This example strongly suggests that a policy of denying disabled individuals access to the employee restroom may well violate the ADA and, therefore, section 54.1.
In sum, we hold that sections 54.1 et seq. apply to policies as well as structural impediments. The statute is violated by policies, not otherwise compelled by law, which deny disabled individuals full and fair access to public accommodations. Thus, the trial court's finding that El Torito's Burlingame restaurant was in compliance with relevant structural access standards did not preclude it from finding a violation of section 54.1(a). The judgment against El Torito is sustained under sections 54.1 et seq.

B. The Lift Policy
The trial court ruled that "there continues to exist a clear violation of the applicable disabled access laws and regulations with respect to the [wheelchair] lift which was installed between the elevated entrance area and the bar area, in that the lift must be actuated by management and is not thereby sufficiently accessible to disabled persons, and Plaintiff is entitled to an injunction with respect thereto."
The judgment states that defendants "shall be and hereby are enjoined from keeping the `lift' (installed between the elevated entrance area to the subject restaurant and the bar area) locked in such a manner as to require the lift to be unlocked or actuated by Defendants management or other employee personnel. Such locked lift a) is in violation of disabled access laws and regulations requiring disabled persons to have unassisted entry, operation, and exit from such lifts and b) is in violation of the requirement of Civil Code Section 54.1 mandating `full and equal access.'"
El Torito contends this ruling must be reversed because (1) the trial court did not have jurisdiction to rule as to the adequacy of the wheelchair lift, (2) the wheelchair lift was constructed to comply with structural access standards, and (3) there is insufficient evidence to support the court's ruling.

I. Jurisdiction
El Torito maintains that "lift issues" were not put in issue by Hankins's complaint and, thus, the court did not have jurisdiction to consider them. It contends the complaint does not mention the wheelchair lift, the lift was not even installed until after the complaint was filed, and Hankins failed to file a supplemental complaint to raise the issue of lift compliance. Citing a First District opinion, *694 El Torito contends that `"evidence cannot determine an issue that the parties have left out of their pleadings.'" (Hughes v. Blue Cross of Northern California (1989) 215 Cal. App.3d 832, 858, 263 Cal.Rptr. 850.)
The present case is not analogous to Hughes v. Blue Cross of Northern California, where appellant was precluded from raising a new issue on appeal. (Hughes v. Blue Cross of Northern California, supra, 215 Cal.App.3d at p. 858, 263 Cal.Rptr. 850.) Hankins's complaint clearly sought to enjoin El Torito's continuing unlawful denial of full and equal access for disabled individuals to the bar and main restaurant area. The complaint expressly alleged that the three steps leading from the entrance to the bar/cocktail lounge area denied Hankins and other disabled individuals access to the restaurant. The complaint sought "injunctive relief ... requiring that each aspect of the Defendants' restaurant which denies full and equal access to disabled persons be modified to properly allow handicap access as required by both California and federal law." Hankins also alleged that El Torito (1) violated applicable disability access laws by "blocking access to the `sports bar' area and primary dining area with three more steps," (2) "knowingly and willfully refused ... to provide full and equal access for disabled persons to the main (lower) dining area and the entire bar area," and (3) willfully and wrongfully excluded him and other disabled individuals "from full and equal access to ... public areas of the El TORITO RESTAURANT which require the climbing of stairs in order to use." Hankins asked the court to "enjoin any continuing refusal by Defendants to grant such access to Plaintiff...."
Thus, the complaint put at issue whether disabled individuals were denied full and equal access to the lounge area of the restaurant and sought to enjoin El Torito's continuing violation of the law. By the time of trial, El Torito had installed a wheelchair lift affording some measure of access to this area. Whether this lift gave the full and equal access required by the statutes upon which Hankins relied, or whether El Torito continued to unlawfully deny access in violation of section 54.1(a), was an issue encompassed by Hankins's pleading and properly before the court.
El Torito argues it was unfair and prejudicial to admit evidence regarding the adequacy of the lift because El Torito was not on notice that Hankins would raise any issues relating to the lift until Hankins presented the testimony of its expert, Peter Margen. However, our review of the record reveals that El Torito argued, in both its trial brief and its motion for judgment on the pleadings, that Hankins's claim for injunctive relief was moot because, among other things, El Torito had installed a wheelchair lift. In response to this argument, Hankins admitted that El Torito had belatedly installed access features on the eve of trial, but maintained the new features still did not comply with state and federal requirements. Indeed, in opposing El Torito's motion for judgment on the pleadings, Hankins expressly argued that El Torito's lift policy violated the law. El Torito cannot now claim that it was surprised when Hankins contested mootness at trial by attempting to establish that the lift was not in compliance with applicable standards.
Finally, El Torito contends Hankins did not suffer an injury entitling him to injunctive relief because he did not visit the restaurant after the lift was installed and attempt to use it. The injunction was sought and granted pursuant to Civil Code section 55 which states: "[a]ny person who is aggrieved or potentially aggrieved by a violation of Section 54 or 54.1 of this code ... may bring an action to enjoin the violation." (Civ.Code, § 55, emphasis added.) Hankins was actually aggrieved when he visited the restaurant prior to the installation of the lift, and he continued to be at least potentially aggrieved to the extent the lift and El Torito's maintenance thereof did not comply with applicable access laws.

2. Structural Access Standards
During trial, the parties stipulated that "the lift was in compliance with Title 24 [of the California Administrative Code] when it was constructed and that the lift is currently now kept locked." Relying on this stipulation, El Torito employs the same argument it used to defend its restroom policy, *695 i.e., that its compliance with structural access standards governing design and construction of a public accommodation precludes a finding that its wheelchair lift policy violates section 54.1(a). We have already rejected this argument. As discussed above, section 54.1(a) applies to policy impediments as well as structural impediments. In fact, the trial court's ruling regarding the lift policy provides additional support for this conclusion since it is based on a disability access regulation which does not pertain to structure or design.
The trial court found that the lift policy violates section 4.11.3 of the ADA Accessibility Guidelines for Buildings and Facilities (the ADAAG).[8] Section 4.11.3 of the ADAAG provides "[i]f platform lifts are used then they shall facilitate unassisted entry, operation, and exit from the lift in compliance with 4.11.2." (36 C.F.R. § 1191.2, p. 301 (1997).) The trial court found that a policy requiring that the lift be unlocked or actuated by a restaurant manager or other employee violates section 4.11.3 because such a policy precludes unassisted entry, operation and exit from the lift.
El Torito does not squarely address ADAAG section 4.11.3. Nor do we find any basis in its reasoning for distinguishing between structural access requirements and non structural requirements (such as the one contained in section 4.11.3) or for excluding the latter from the scope of Civil Code section 54.1. Instead, El Torito simply contends it was compelled by law to install a wheelchair lift that would be controlled by a key.
El Torito specifically relies on section 4.11.2 of the ADAAG and the Uniform Building Code former section 5107, subdivision (a), of title 24 of the California Code of Regulations.[9] But these regulations do not, as El Torito implicitly contends, undermine the trial court's ruling. Assuming that El Torito was required to install a key lock in the lift, any such requirement is not inconsistent with section 4.11.3 of the ADAAG, which requires the facilitation of unassisted entry, operation, and exit from the lift. (Delil v. El Torito Restaurants, Inc., et al. (No. C 94-3900-CAL) (N.D.Cal. Dec. 2, 1996) 1996 WL 807395 [9 NDLRP 120] (Delil).)
In Delil, the Honorable Charles Legge denied El Torito summary judgment in a similar case involving the wheelchair lift at an El Torito restaurant in Monterey. (Delil, supra, 1996 WL 807395.) The plaintiff, a disabled wheelchair user, alleged, among other things, that El Torito violated the ADA and Civil Code sections 51 and 54 by keeping its wheelchair lift locked. The court denied El Torito's motion for summary judgment notwithstanding the fact that El Torito had complied with federal and state regulations by installing a key lock on the lift. The court concluded that keeping the lift locked when not in use did not violate applicable laws. (Id. at pp. 9-11.) Nevertheless, the court found that triable issues of fact remained as to whether El Torito complied with section 4.11.3 of the ADAAG by facilitating unassisted *696 ed entry, operation and exit from the lift. (Ibid.)
The Delil court rejected the contention that the section 4.11.3 requirement of unassisted entry, operation and exit conflicts with the key lock requirement contained in section 4.11.2 of the ADAAG. It noted that the drafters of the ADAAG had expressly reconciled these requirements in their supplementary information section which states: "The technical specification in 4.11.3 also has been revised in response to comments regarding independent operation to specifically require that platform lifts or wheelchair lifts provide for unassisted operation. This requirement does not preclude the use of a key to operate a lift as long as the key is readily available and allows for unassisted operation." (Delil, supra, 1996 WL 807395 at pp. 9-10, quoting 36 C.F.R., Pt. 1191, App. A, § 4.11 (1991), emphasis added.)
Implicitly adopting this reconciliation, the Delil court concluded that "El Torito can facilitate independent, unassisted access to a key-locked lift." (Delil, supra, 1996 WL 807395 at p. 11.) We agree with Judge Legge's conclusion and the quoted regulatory reconciliation upon which it is based. We thus reject El Torito's contention that its compliance with regulations requiring that it install a key-locked lift precluded the trial court from finding that its policy regarding the use of that lift violated section 54.1(a).[10]

Sufficiency of the Evidence
El Torito contends the finding that its lift policy violates the access laws is not supported by the evidence. El Torito concedes that it is its policy to keep the lift locked, but contends that this policy does not, by itself, establish a section 54.1 violation.
Both Hankins and amicus curiae Disability Rights Advocates would have us hold that an admitted policy of keeping the lift locked violates California law. The Delil court rejected this contention, but the issue is not properly before us and we expressly do not address it. This record does not adequately present for consideration issues, such as child safety, which are surely relevant in determining the legality of a locked lift policy. Further, the trial court never addressed whether (a) this particular wheelchair lift is subject to regulations requiring that it be kept locked when not in use (see Cal.Code Regs., title 24 Former § 5107, subd. (a)(6)), (b) keeping the lift unlocked when not in use violates any law or regulation, or (c) compliance with one regulation might excuse compliance with another arguably conflicting regulation. These are not issues which, given the state of this record, we are inclined to address in the first instance.
The trial court enjoined El Torito from maintaining a policy requiring that the lift be actuated or unlocked only by an El Torito employee. Thus, the question is whether there is sufficient evidence establishing such a policy exists at El Torito's Burlingame restaurant. Aside from the parties' stipulation that the lift is kept locked, the only relevant evidence brought to our attention is the testimony of Hankins's expert, Peter Margen.[11] Margen works for a consulting firm specializing in advising entities regarding compliance and conformance with disability access laws and regulations. Margen inspected El Torito's Burlingame restaurant on July 20 and 22, 1994, to, among other things, determine whether it was accessible to disabled individuals. Margen opined that a disabled patron could not use the wheelchair lift unassisted. He observed that the wheelchair lift was key locked in the "off position. He testified that an individual using a wheelchair would have to seek out an employee to obtain *697 information about how to obtain a key to unlock the lift. He did not find any information posted anywhere in the restaurant that "alert[ed] an individual with mobility impairment how to get access to the lift if they came into the restaurant,"
In its opening brief, El Torito provides a detailed description of the lift, how it is used and its safety features, and contends that the operating controls are "kept keylocked to avoid children tampering with the lift and to avoid children being caught underneath the lift." El Torito also discusses the alleged location of the key and how it can be accessed by disabled individuals. However, this self-serving narrative is, once again, not supported by any reference to the record.[12] Though Hankins pointed out this omission in his brief, El Torito's reply brief completely ignores this issue. Instead, El Torito argues, for the first time in its reply brief to this court, that the trial court committed reversible error by qualifying Margen as an expert and permitting him to testify as to legal conclusions.
El Torito cannot challenge the admissibility of Margen's testimony for the first time in a reply brief. (American Drug Stores, Inc. v. Stroh (1992) 10 Cal.App.4th 1446, 1453, 13 Cal.Rptr.2d 432; Stoll v. Shuff (1994) 22 Cal.App.4th 22, 25, 27 Cal.Rptr.2d 249.) In any event, this argument is meritless. El Torito relies primarily on Burkhart v. Washington Metro. Area Transit Auth. (D.C.Cir.1997) 324 U.S.App.D.C. 241, 112 F.3d 1207 (Burkhart), a federal case which held a trial court abused its discretion by permitting an expert on police department compliance with the ADA to offer legal conclusions and mis-state relevant principles of disability law to a jury. (Id. at pp. 1212-1214.) The error was prejudicial because substantial portions of the testimony were inaccurate and contained impermissible legal conclusions directing the jury to find liability in an otherwise thin case. (Ibid.) In contrast to Burkhart, in the present case the Federal Rules of Evidence do not apply, there was no jury which may have been misled, and there is no basis for concluding that the trial court relied on Margen's alleged legal conclusions or mis-statements. Indeed, as discussed above, the relevant portion of Margen's testimony is his percipient testimony: his observations of the restaurant and the wheelchair lift. Nevertheless, the question remains whether the record (e.g., Margen's testimony) establishes that El Torito's lift policy violates the law. We find that it does not.
Missing from this record is evidence which sufficiently describes (1) what this particular lift looks like (e.g., whether the platform and lift travel are enclosed), (2) how the lift is accessed and operated (e.g., whether an employee must operate the lift, where the key is kept and who may obtain it), and (3) how El Torito's lift access policy affects the handicapped patron (e.g., how much time and effort is spent obtaining a key and getting to the lounge area). Indeed, this record does not contain sufficient evidence for us to draw any conclusions as to the nature and adequacy of El Torito's lift policy. Therefore, this case must, regrettably, be remanded to the trial court to take evidence and make the necessary findings as to how the wheelchair lift is in fact accessed, operated and used at the Burlingame restaurant, and whether El Torito's policy regarding its access, operation and usage violates the law.

C. Expert Witness Fees[**]

IV. THE CROSS-APPEAL[**]

V. DISPOSITION
The portion of the judgment enjoining El Torito from "keeping the `lift' ... locked in such a manner as to require the lift to be unlocked or actuated by Defendants management or other employee personnel" is reversed and remanded for further proceedings consistent with this decision. Should the trial court determine, after considering El Torito's past and present policies regarding access to and operation and usage of the lift, *698 that an injunction should not issue, it may reconsider the amount of attorney's fees previously awarded. In all other respects, the judgment is affirmed. Each party is to bear his or their own costs on appeal.
LAMBDEN and RUVOLO, JJ., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.C., and IV.
[1] Defendants, appellants and cross-respondents El Torito Restaurants, Inc., Family Restaurants, Inc., and Restaurant Enterprise Group will be referred to as "El Torito."
[2] We reject El Torito's related and similarly disconcerting argument that restaurant patrons are not a protected class and discriminating against them does not violate the Unruh Civil Rights Act. As noted in the text, El Torito did not discriminate against restaurant patrons generally. Further, we note that, in making this sophistic argument, El Torito violated rule 977 of the California Rules of Court by discussing Curran v. Mount Diablo Council of the Boy Scouts (Cal. App., B061869) review granted, June 2, 1994, judgment affirmed (March 23, 1998) 17 Cal.4th 670, 72 Cal.Rptr.2d 410.

While on this subject, we also note, with considerable distress, that El Torito's counsel has improperly cited two other depublished cases. (See Kirsh v. State Farm Mutual Auto. Ins. Co. (1991) 233 Cal.App.3d 84, 284 Cal.Rptr. 260, ordered not to be officially published, March 12, 1992; Holloway v. Crescent Truck Lines, Inc. (1996) 49 Cal.App.4th 751, 56 Cal.Rptr.2d 850, review denied and ordered not to be officially published, December 23, 1996.) It is difficult to excuse these errors especially in light of El Torito's other numerous violations of rule 15(a) of the California Rules of Court by, e.g., its failure to provide record citations for a veritable host of its factual assertions.
[3] El Torito also contends Hankins stipulated that El Torito denied Hankins access to the employee restroom because it believed former Health and Safety Code section 27626 prohibited it from allowing patrons to travel through the kitchen to use the employee facilities. The record citation El Torito provides reveals that Hankins merely stipulated that the trial court could take judicial notice of section 27626.
[4] In contrast to the Unruh Civil Rights Act, a violation of section 54.1(a) does not require intent. (Donald v. Cafe Roy ale. Inc. (1990) 218 Cal.App.3d 168, 178-180, 266 Cal.Rptr. 804 (Cafe Royale).)
[5] For reasons that follow, it is unnecessary for us to address Hankins's contention that the trial court erred by failing to find that EI Torito was in violation of Health and Safety Code section 19955 on the day of the incident.
[6] The only case we found which raised this question declined to answer it. (See Donald, supra, 209 Cal.App.3d at p. 1189, 260 Cal.Rptr. 49.) In Donald, appellant argued that the trial court which entered summary judgment against it erred by holding that a defendant could not be liable for violating section 54 absent a showing it violated a structural improvement regulation. The Donald court found it unnecessary to resolve this issue because it concluded the defendant in that case had violated a regulation. (Id. at p. 1195, 260 Cal.Rptr. 49.)
[7] Civil Code section 54.3, subdivision (a), states in pertinent part: "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages...."
[8] The ADAAG was adopted by the United States Department of Justice pursuant to its responsibility for implementing Title III of the ADA. (42 U.S.C.A. § 12186(b); 28 C.F.R. Pt. 36., App. A (1991).)

El Torito, Hankins and the trial court all appear to presume that the ADAAG contains relevant guidelines applicable to the wheelchair lift. We note that evaluating the lift under the ADAAG to determine whether El Torito has violated section 54.1(a) may not be consistent with the trial court's separate ruling that Hankins does not have standing under the ADA. We have determined we will ignore this possible inconsistency since (1) the parties were, apparently, not bothered by it in the trial court and, in any event, they do not mention it here, and (2) the lift was installed in October 1993, after the ADA became effective.
[9] Section 4.11.2 of the ADAAG requires that a lift be constructed in compliance with American Society of Mechanical Engineers (ASME) 17.1 Safety Code for Elevators and Escalators. ASME Rule 2000.10a, in turn, provides that "[o]peration of the car from the upper or lower landing and from the car shall be controlled by a key." Uniform Building Code, former section 5107, subdivision (a)(6) of title 24 of the California Code of Regulations provides, in part: "When the platform and lift travel area are not enclosed, `Call-Send' controls shall be key locked or otherwise controlled as to use." In arguing that it installed the type of lift referred to in section 5107, subdivision (a)(6), El Torito has provided a detailed factual description of the lift without any reference to the record, thereby, once again, violating the California Rules of Court.
[10] In its reply brief, El Torito argues that the lift policy did not violate the Unruh Civil Rights Act. We need not address this argument inasmuch as the trial court never found that the lift policy violates Civil Code section 51.
[11] Both parties mistakenly rely on the testimony of Ronald Mincer, a paralyzed individual who was retained by El Torito to advise it with respect to compliance issues. El Torito relies on Mincer's testimony that the lift was not locked when he visited the restaurant and that he had no problem using it. This testimony is irrelevant since El Torito expressly stipulated during trial that the wheelchair lift is kept locked. Hankins relies on Mincer's stated opinion that "[w]e ... [s]houldn't have to ask somebody for a key ... it's embarrassing." This testimony is simply not probative of El Torito's actual policy regarding access to and use of the lift.
[12] The only page from the record that El Torito cites in this portion of its brief is a general description, by an architect who worked on the 1985 remodel, of a 1989 wheelchair lift design requirement contained in Uniform Building Code, former section 5107 of Title 24 of the California Code of Regulations. This evidence is not relevant since the trial court did not find that the wheelchair lift design violated Title 24.
[**] See footnote *, ante.